IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2001

## STATE OF TENNESSEE v. JOHN T. BLACKSMITH

**Appeal from the Criminal Court for Davidson County**
**No. 2000-T-162     Frank G. Clement, Jr., Judge**

---

**No. M2000-02294-CCA-R3-CD - Filed October 8, 2001**

---

The defendant, John Blacksmith, appeals his Davidson County Criminal Court jury conviction of second-offense driving while under the influence of an intoxicant (DUI). He claims (1) that the evidence was insufficient to support the jury's conclusion that, while intoxicated, he was in physical control of an operable  motor vehicle and (2) that the trial court erred in refusing to grant a mistrial when a state's witness introduced inadmissible evidence that besmirched the defendant's character. We discern no reversible error and affirm the trial court's judgment.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Hollis I. Moore, Jr., Nashville, Tennessee, for the Appellant, John T. Blacksmith.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; James Sledge, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

At approximately 3:00 p.m. on January 20, 2000, Metropolitan Nashville Police officers Angela Page and Brad Alexander were investigating possible drug-dealing activity behind a convenience store located near the intersection of 28th and Clifton Streets in Nashville. While the officers were on the scene, a person using a public telephone booth gained Officer Page's attention and pointed out that a man was slumped over in a truck parked near the phone booth.

Officer Page went to the driver's side of the truck, observed the apparently unconscious defendant slumped over in the driver's seat, and attempted to rouse him by rapping on the window. She continued to rap on the window for two to three minutes, long enough for Officer Alexander to go to the patrol car, initiate a records check on the truck license tag, and return to the

truck.  After Officer Alexander's return, Officer Page was finally successful in rousing the defendant. When the defendant rolled down the window and asked what the officer wanted, Officer Page smelled alcohol and saw an open bottle of liquor near the defendant's right hand.  The defendant stated that he had "just drove up[,] . . . parked his truck[, and] was waiting to use the phone."  When Officer Page asked the defendant whether he had been drinking, he responded, "Well, yeah.  Just because I've been drinking doesn't mean I've been driving."

Both Officers Page and Alexander noticed that the key to the truck was in the ignition switch; however, the truck engine was not running and was never started while the officers were on the scene. The defendant was alone inside the truck, which was located in the parking lot of the convenience store.  The store was open for business and was being patronized by a number of customers at the time of the officers' encounter with the defendant.   Neither officer could testify how long the truck had been parked before they arrived on the scene.

Officer Page testified that when she asked the defendant to step out of the truck, he became "very uncooperative, very belligerent."  He refused to participate in field sobriety tests, indicated that he hated the police, and protested that "just because he was drinking didn't mean he was driving."  The officers arrested the defendant and transported him to the police station, where they read him the implied consent law.  He then refused a breath-alcohol test.  During the two hours that Officer Page had contact with the defendant on January 20, 2000, "[h]e was staggering, stumbling, [and had] the obvious odor of alcoholic beverage on his person."  Her official report of the arrest indicated that he was "loud and talkative," his eyes were "bloodshot" and "watery," he was "confused," his state of intoxication was "extreme," and he was unable to operate a vehicle. Officer Page testified that these descriptions were based upon her observations.

Officer Alexander described the defendant as belligerent and smelling of alcohol.  He had very watery, bloodshot eyes, and upon exiting the truck, the defendant had to brace himself against the truck bed to avoid falling down. He corroborated Officer's Page's testimony concerning the defendant's attitude toward police and his behavior following his arrest on the scene.  When asked whether he would have allowed the defendant to go free had he taken a breath alcohol test and passed, Officer Alexander testified that he would not have let him drive, but "[p]ersonally, I would have, you know let him [go] – [w]ell, actually, different circumstances; he did have a warrant for his arrest, so, no, I wouldn't have let him go."  Officer Alexander opined that the defendant was incapable of operating a motor vehicle.

After the state concluded its direct examination of Officer Alexander, the defendant, outside the presence of the jury, moved for a mistrial because of Officer Alexander's testimony that the defendant was the subject of an outstanding warrant.  He argued that the state had portrayed the defendant as being hostile to the police and that the testimony about the warrant was especially damaging because, with the other evidence in the case, it portrayed the defendant as a lawless individual.  The state argued that the warrant was issued for failing to appear. It proposed that the jury be told of the rather innocuous nature of the charge supporting the warrant, but the defendant

objected to the jury being given this information. The trial court held that the testimony was error but that "it's minor enough that it is not sufficient for . . . a mistrial."

The jury returned to the courtroom, and the trial judge instructed them as follows:

Let me share a couple of things with you: One of my responsibilities is to make certain that everybody gets a fair trial. And one aspect of a fair trial is to make certain that only that evidence which pertains to the matter that you're to decide is presented to you. And it's not to suggest that you're not smart enough and mature enough to put other matters aside, but you just don't want to worry about, you know, "Well, did they consider something that they shouldn't be considering?"

I have evaluated a matter and I want to share it with you. In response to a question that did not require the additional information as part of the answer, but which I think was a fair inclusion, the Officer said, "Well, I wouldn't have let him go anyway because he had an outstanding warrant."

I don't want you to infer anything wrong from that. First, I want you [to] know that I now know what it is, and it's an extremely minor thing. Though the Officer had a duty to take a person down, say, you know, "Here it is and this is in the computer and I'm supposed to bring him in for this paperwork to be submitted." It doesn't have anything to do with this offense. It was a very minor matter, but the Officer did have a duty not to let him go. And I don't want you to consider it at all.

The important thing is to focus on what's the issue to be tried today. And it doesn't matter if the Defendant is Florence Nightengale, who has saved a thousand people from drowning, or someone who has been less than a perfect citizen, it doesn't matter. The question is, on the day in question, January the 20th of 2000, was the Defendant driving or in physical control of [a] motor vehicle while under the influence of an intoxicant, and so please limit your consideration to that. And I insist that you strike from your consideration any suggestion that there was a warrant out there.

Number One, it's not relevant;

Number Two, it was extremely minor; and

Number Three, it would be justification for a mistrial
if you let that creep into your decision making process.

So please disregard that, I'm very serious about it.

Testimony resumed after this instruction was given, and Metro Officer Overton Merritt testified that he had several years' experience in administering breath alcohol tests at the police station. Although the defendant refused the test, Officer Merritt observed the defendant for a period of time after Officer Page brought him in. Based upon observing "thousands" of persons to whom he had administered breath alcohol tests, he testified that the defendant was "very talkative . . . angry, confused, extreme odor of alcohol, slurred speech, he staggered, red eyes, red bloodshot eyes, and he was drunk."

The defendant did not testify. Based upon the evidence summarized above and evidence of a prior DUI, the jury convicted the defendant of second-offense DUI.

In the defendant's first issue, he challenges the sufficiency of the convicting evidence. Specifically, he complains that there was no evidence that the parked truck in which the defendant was found was capable of being operated.

In reviewing the sufficiency of the convicting evidence, we apply a familiar standard. When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including its direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational factfinder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See Jackson v. Virginia*, 442 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); Tenn. R. App. P. 13(e); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based on direct evidence, as well as circumstantial evidence or a combination thereof. *See State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). On appeal, a defendant no longer enjoys the presumption of innocence; consequently, he shoulders the burden of demonstrating that the evidence is legally insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

In determining sufficiency of the evidence, the court does not replay and reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *See Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Rather, this court extends to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

As is pertinent to the present case, a person commits DUI who drives or is in "physical control of any automobile or other motor driven vehicle on any of the public roads and highways . . . or while on . . . any . . . premises which is generally frequented by the public at large" while under the influence of any intoxicant. Tenn. Code Ann. § 55-10-401(a) (1997).

By defining DUI to include mere "physical control" of a motor vehicle, the legislature created a strict liability crime. *See State v. Turner*, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996). To assess whether a defendant was in physical control of a vehicle for purposes of the DUI offense, a jury looks to the totality of the circumstances, including "the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, . . . the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved." *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993); *see Turner*, 953 S.W.2d at 215 ("[I]n enacting the driving while intoxicated statute, the legislature desired not only to prohibit the operation of a vehicle by an intoxicated individual, but also to remove from the inebriated the option of operating a vehicle.").

In our view, the totality of the circumstances indicates that, while intoxicated, the defendant was in physical control of the truck on premises generally frequented by the public at large. The state introduced ample evidence of the defendant's intoxication, a fact that the defendant neither contested at trial nor contests on appeal. Likewise, he does not contest that the location of the vehicle was in a place frequented by the public, and the evidence shows that it was in such a place. The defendant was not only alone inside the vehicle but was in the driver's seat. The key was located in the ignition switch. Although there was no testimony that the truck engine was started or that the officers saw the truck move under its own power, the defendant told Office Page at the scene that he had "just drove up . . . and parked." This statement established that the vehicle was operable and that the defendant, but for his intoxication, could have driven it away.

These facts place this case solidly within the ambit of cases wherein sufficiency of the evidence was found. *See, e.g., Lawrence*, 849 S.W.2d at 765 (defendant's truck stopped in the road, and defendant was asleep in the driver's seat with the vehicle's keys in his pocket; defendant "could have at any time started the engine and driven away"); *State v. Johnny Wade Meeks*, No. 03C01-9811-CR-004411, slip op. at 6 (Tenn. Crim. App., Knoxville, Dec. 3, 1999) (defendant alone and in driver's seat of van with motor running and lights on; evidence sufficient to prove physical control), *perm. app. denied* (Tenn. 2000); *State v. David W. Seiber*, No. 01C01-9505-CC-00138, slip op. at 8 (Tenn. Crim. App., Nashville, Feb. 13, 1997) (defendant found either asleep or passed out behind the wheel of the vehicle with the headlights on and the key in the ignition; evidence sufficient that defendant exercised physical control over the vehicle); *State v. James W. Starnes*, No. 01C01-9408-CC-00279, slip op. at 5 (Tenn. Crim. App., Nashville, July 14, 1995) (defendant's car mechanically capable of being driven, so dispute whether he actually attempted to start vehicle is of no consequence), *perm. app. denied* (Tenn. 1996).

Thus, we conclude that the evidence was sufficient to support the jury's verdict.

In the defendant's next issue, he is aggrieved of the trial court's failure to declare a mistrial in response to Officer Alexander's statement about an outstanding warrant. Although the defendant does not say so in his brief, we assume that his complaint about this testimony is grounded in Tennessee Rule of Evidence 404. Under Rule 404, character evidence is generally inadmissible to prove action in conformity with the character or trait on a particular occasion. The state, however, takes no pains to posit that the testimony was admissible; rather, it argues that the trial court did not err in refusing to grant a mistrial. Essentially, the state argues that the trial court acted within its discretion to deny the motion for a mistrial because the testimony about the outstanding warrant was not egregious and, in any event, it was effectively offset by the court's instructions. We agree.

The entry of a mistrial is appropriate when the trial cannot continue for some reason, or if the trial does continue, a miscarriage of justice will occur. *State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). "A mistrial is usually appropriate in a criminal case only where there is a 'manifest necessity.'" *State v. Seay*, 945 S.W.2d 755, 764 (Tenn. Crim. App. 1996). The burden of showing manifest necessity rests upon the defendant. *Id.* The decision to grant a mistrial lies within the sound discretion of the trial court, and this court will not disturb the trial court's determination unless a clear abuse of discretion appears on the record. *McPherson,* 822 S.W.2d at 370.

Even though the testimony about the warrant was inadmissible evidence pursuant to Rule 404, the only information communicated to the jury was the existence of a warrant. The trial court took pains to minimize the significance of the warrant. The trial judge cogently emphasized to the jury, not only that the existence of a warrant was irrelevant to the case on trial, but also that the warrant represented an insignificant matter. Even though the trial judge did not specifically instruct the jury as to the dangers of propensity evidence, we think he effectively abated any prejudice to the defendant that resulted from Officer Alexander's statement.

"It is presumed that the jury followed the trial judge's instructions not to consider inadmissible evidence." *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (affirming the denial of a mistrial based upon prejudicial character evidence being countered by curative instructions). Accordingly, we hold that the denial of the mistrial was not an abuse of discretion.

As a result of our analyses, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE