**STATE of Tennessee, Appellee,**

**v.**

**Willie Robert SEAY, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 23, 1996.

Permission to Appeal Denied by Supreme Court Sept. 9, 1996.

Comer L. Donnell, District Public Defender, James R. Stallings, Jr., J. Robert Hamilton, Richard Brodhead, Lebanon, for Appellant.

Charles W. Burson, Atty. Gen. & Reporter, William David Bridgers, Asst. Atty. Gen., Nashville, Doug Hall, Dist. Atty. General Pro Tem, David Durham, Asst. Dist. Attorney General, Lebanon, for Appellee.

## OPINION

SUMMERS, Judge.

The appellant, Willie Robert Seay, was convicted by a jury of two counts of sale of cocaine over .5 grams. Sentenced as a Range II multiple offender, the trial court imposed consecutive fifteen-year sentences running consecutively to his existing sentences. The appellant brings this appeal claiming that:

1. the evidence was insufficient to support his convictions;
2. he received ineffective assistance of counsel;
3. the trial court erred by allowing the introduction of improper and inadmissible evidence;
4. the trial court erred in allowing the state to present improper opening and closing arguments;
5. the trial court erred in not inquiring into the condition of one juror who reported to the court that he had been up all night due to the death of a cousin;
6. he was denied a fair trial due to cumulative error;
7. the trial court erred by not *sua sponte* declaring a mistrial following statements by Agent Serbin that effectively told the jury that the appellant had a prior record;
8. the trial court erred by not *sua sponte* declaring a mistrial based on inquiry of him during cross-examination which informed the jury that he had discussed a plea bargain; and
9. the trial court erred in overruling his motion for a new sentencing hearing and recusal of the trial judge.

Following our review, we affirm the decision of the trial court.

The testimony at trial revealed that the 15th Judicial Drug Task Force in Lebanon, Tennessee, conducts drug buys using confidential operatives. On each buy, the operative is searched and wired with a device that allows the officer(s) to monitor the transaction. After the buy is complete, the operative returns the narcotics to the officers and is paid for his services.

On December 21, 1993, Agents Gwin King and J.B. Hicks of the Drug Task Force conducted their first buy involving the appellant. Following the established procedure, Terry Cowan, the operative, was wired and given $60.00 to purchase cocaine from the "first two that offer to sell." Cowan encountered Clifton Avent, who took him to meet the appellant. Soon thereafter, the exchange occurred between Cowan and the appellant. The officers monitored the entire transaction via the transmitter. A tape recording of the evening's occurrence was introduced into evidence. King said that he recognized Cowan's voice on the tape but admitted that he did not know who Cowan was speaking with during the transaction. Agent King conducted a field test which revealed that the substance tested positive as cocaine.

A second buy occurred on January 11 with Agents Jeff Serbin and King supervising the same operative. The agents met Cowan at a designated location and searched both him and his vehicle. Finding him clean, they again wired him and gave him $60.00 to make another purchase from the appellant. When Cowan entered the appellant's home, the appellant asked him what he needed. Cowan told him he "needed a sixty" and the exchange was made. Agent Serbin said he had listened to the tape since the incident and clearly recognized the voices of Cowan and the appellant. He also listened to the tape of the December buy and testified that the voice of the man selling the cocaine was the appellant. Agent Serbin testified that he had known the appellant all of his law enforcement career, had played softball against him for two or three years, and being a law enforcement officer had always come into

contact with the appellant. Serbin took the drugs back to the office where it field-tested positively as cocaine. The cocaine was then sealed in a brown envelope and sent to the crime lab. Patty Choatie of the crime lab testified that the envelopes from each buy contained over .5 grams of cocaine.

Terry Cowan described his job as an operative for the task force. He said that after completing each buy he would be paid by the task force. In the eight months preceding the trial, Cowan had made approximately one hundred buys for the task force involving almost twenty-nine sellers. Cowan admitted that he had a prior criminal record of shoplifting. He corroborated the testimony of the task force officers and described the details of each buy from the appellant. As to the first buy, Cowan said that although Avent took him to the appellant, the appellant was the party accepting the money. At the second buy, Cowan said that the appellant asked him what he wanted. Cowan responded that he needed "a sixty." The appellant produced the drugs and the exchange for cash was made. Cowan admitted on cross-examination that he had used drugs in the past.

The appellant testified on his own behalf and denied that he had sold Cowan anything. On the date of the first buy, the appellant said that he took his sister, Tameka, home and walked in to find Cowan, Avent and Allen Eddings. When he saw Cowan, he left the room explaining that on the previous day he had given Cowan a ride during which Cowan offered him $100 to perform a homosexual act. The appellant also vehemently denied any knowledge of the second buy. Defense counsel questioned the appellant on direct about his prior convictions that included selling cocaine. Tameka Stewart, appellant's sister, verified that her brother had driven her home but denied that any drug transaction occurred in her home.

Clifton Avent, who was incarcerated at the time of trial for a drug sale to Cowan, testified that he was present during the first buy at Allen Edding's house. Avent admitted that he and Cowan "had a deal" but denied having seen a sale take place between Cowan and the appellant. Avent's testimony was followed by that of Bobby Bass who was present at the January 11th transaction. He claimed that the appellant was not present and that no drug transaction occurred at all. Andreana Bass corroborated Bobby Bass' testimony.

### I

The appellant's first challenge is that the evidence was insufficient to support his convictions. In a sufficiency of the evidence challenge, the relevant question on appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); T.R.A.P. 13(e).

■ In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams,* 657 S.W.2d 405 (Tenn.1983). Moreover, a guilty verdict replaces the presumption of innocence enjoyed at trial with the presumption of guilt on appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). The appellant has the burden of overcoming the presumption of guilt. *Id.* On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978).

■ The appellant's claim of insufficient evidence is a challenge to the credibility of the witnesses. He claims that the state's case was based on the testimony of an undercover operative, the tapes of these transactions and the testimony of Agent Serbin. The appellant argues that the last two bases failed to give the jury sufficient evidence to convict him because the tapes were inaudible and because Serbin only said he "believed" he heard the appellant's voice on the tape. Because Cowan, the operative, was an admitted former shoplifter and drug user, the appellant opines that Cowan should not have been believed. Instead, he concludes that

the jury should have believed his story, supported by his witnesses, that he had no knowledge of either drug transaction. However, the weight and credibility of the witness' testimony are matter entrusted exclusively to the jury as the triers of fact. *State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984); *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim. App.1978).

The jury had sufficient evidence before them to convict the appellant of sale of cocaine over .5 grams. Two agents testified that they monitored the transactions via a transmitter and overheard each drug buy. Agent Serbin testified that he recognized the appellant's voice on both tapes having known the appellant for two or three years. Further, the operative testified that he purchased drugs twice from the appellant. We will not usurp the jury's function as the sole judge of the credibility of the witnesses. This issue has no merit.

## II

In his second issue he asserts ten bases for his claim that he was denied the effective assistance of counsel at trial. Specifically, he claims that counsel:

a. failed to require the state to prove a valid chain of custody of the two envelopes of cocaine;

b. failed to explore the operative's motive for testifying against the appellant, e.g., amount he was paid, whether he was under investigation for drug offenses;

c. elicited testimony from him during direct examination regarding his prior drug convictions;

d. failed to offer timely objections and/or move for a mistrial due to comments and statements of Agent Serbin that implicitly informed the jury of appellant's prior record;

e. failed to offer timely objection to hearsay testimony of Agent King regarding the December sale;

f. failed to question defense witnesses regarding the subject of their testimony;

g. failed to expose during closing argument the inconsistencies in the testimonies of various state witnesses;

h. failed to point out in closing argument that the appellant's voice had not been specifically identified on the tape offered into evidence;

i. prejudiced his case by playing the tapes that the state had not played during its case-in-chief; and

j. failed to make a timely objection and/or to move for a mistrial due to the state's referral to plea negotiations.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong analysis when an appellant claims that counsel's assistance was so defective so as to require a reversal. First, the appellant must show that counsel's performance was deficient and second, that the deficient performance prejudiced him to the point that (s)he was deprived of a fair trial. *Id.* at 687, 104 S.Ct. at 2064. As to the first prong, to prove a deficient performance, the appellant must prove that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064–65. This evaluation must be accompanied by a strong presumption in the reviewing court that counsel's conduct falls within the wide range of acceptable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. To meet the second prong, the appellant must prove that he was prejudiced by showing that there was a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694, 104 S.Ct. at 2068.

In Tennessee, our Supreme Court held that the appropriate test for determining whether counsel provided effective assistance of counsel at trial is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn.1975).

As his first basis, the appellant claims that his trial counsel failed to require the state to prove a valid chain of custody of the cocaine from the agent to the lab. The testimony explicitly indicates that the substance

taken in the second buy was field tested, placed in a marked envelope and sent to the crime lab. Although the record does not detail the custody chain of the cocaine from the first buy, Agent King said he tested the substance to see if it should be sent to the crime lab. Further, lab results, finding that the substance was cocaine, were admitted into evidence at trial. Without evidence to indicate that the chain of custody was tainted in some way, we do not find that an omission rose to the level of ineffective assistance.

■ Next, the appellant claims that his counsel was ineffective for failing to explore the operative's motive for testifying against him. This claim is not supported by the record. Cowan, the undercover operative, told the jury during direct examination that he was paid after each completed drug buy. Further, the transcript indicates that Cowan was cross-examined extensively. No evidence existed for trial counsel to enter a line of questioning regarding an investigation into Cowan's activities. This claim is similarly without merit.

■ Third, the appellant claims that counsel prejudiced him by asking him about his prior drug convictions during direct examination. Counsel testified at the motion for new trial hearing that because the court had already approved the state's request to question the appellant regarding these offenses, he wanted to soften the blow. Further, counsel did not want the jury to think they were concealing the prior convictions when it was inevitable that the state would question the appellant about them during cross-examination. This was a valid trial tactic often used by trial attorneys that will not be second-guessed by this Court.

■ The appellant's next basis is that counsel failed to offer timely objections and/or move for a mistrial after Agent Serbin made comments that could implicitly be interpreted that appellant had a prior record. The comments at issue were made by Serbin during his direct testimony. In response to the state's question as to if he knew the appellant, Serbin said that "being a law enforcement officer I always came in contact with [the defendant]." Serbin further added

that "we had plenty of appointments together." We do not find that these statements crossed the line into impermissible testimony. Because the appellant's prior record was revealed during his testimony, we find that error, if any, was harmless. T.R.A.P. 36(b); Tenn.R.Crim.P. 52(a).

■ The appellant's fifth claim is that counsel failed to timely object to the hearsay testimony of Agent King regarding the December sale. His challenge is to two particular responses given by King in describing what he had heard via the transmitter. In the first instance, King responded that he heard Avent say that the appellant was at 101 Upton Heights and that Cowan could go up there. The second response by King was that the appellant handed Avent the cocaine. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R.Evid. 801(c). Thus, King's testimony as to what Cowan and Avent had to say was hearsay. However, because the tapes of the transactions were played to the jury and due to the strength of the remaining evidence, we find that no prejudice resulted which would have affected the outcome of the trial. This issue is without merit.

■ In his sixth claim, he asserts that counsel failed to question defense witnesses regarding the subject of their testimony. This attack is aimed at counsel's statement at the motion for new trial hearing in which he told the court that two of the defense witnesses would testify that counsel met with them only once. However, neither witness testified at the hearing. Trial counsel testified that he had spoken with appellant's witnesses several times. This claim is baseless.

■ The appellant's next issue is that counsel failed to point out, during closing argument, inconsistencies in the testimonies of Agents Serbin and King and operative Cowan. The appellant, however, points to no error in counsel's argument or to any prejudice. The record shows that counsel told the jury that what the agents testified to under oath did not equate to the evidence revealed by the tape. We find no merit to this claim

as counsel adequately presented his theory of the case.

■ In a similar argument, appellant claims that his counsel failed to point out during closing argument that the appellant's voice had not been specifically identified on the tape. Agent Serbin told the jury that the voice on the tapes, introduced during Serbin's testimony, was that of the appellant, whom he had known for two or three years. Appellant claims that because the tapes were not played until the defense presented its proof, Serbin failed to point out what specific statements were attributable to the appellant. We find that the agents' testimonies that they had listened to the tapes and had identified the various voices along with their descriptions of the drug buy events were sufficient for the jury to draw its own conclusions. This claim is without merit.

■ In his ninth basis for relief within this issue, the appellant contends that his case was prejudiced when his counsel played the tapes during defense proof when they had not been played during the state's case-in-chief. As in basis three above, counsel employed his own trial strategy to show the jury that the tapes were so unclear as to be useless in establishing that the transactions occurred. Combining this tactic with the credibility argument against Cowan, counsel obviously attempted to weaken the state's case. It appears that counsel wanted the jury to infer that the state did not play the tapes due to their inconclusiveness. Nonetheless, we will not undermine a valid trial strategy. This issue is without merit.

■ In his final argument within this claim, the appellant asserts that counsel failed to make a timely objection and/or move for a mistrial when the state referred to plea negotiations. During re-cross-examination of the appellant, the state asked him if he was aware of the sentence he would be facing if found guilty. The state then asked, "[k]ind of make a man not tell the truth wouldn't it?" At this point no mention was made by the state of the plea negotiation process. However, the appellant's unresponsive reply was "If I'm guilty I wouldn't be here, I would plea bargain." Thus, the appellant brought

the subject before the jury. Further attempts to discuss the subject were properly curtailed by the trial judge, who also gave a curative instruction. We find no error in defense counsel's failure to either object or move for a mistrial. This argument has no merit.

In summary, we find that counsel's errors did not constitute ineffective assistance of counsel. Further, we find no showing of prejudice. This issue in its entirety is without merit.

### III

■ Next, the appellant contends that the trial court erred by allowing into evidence certain testimony of Agents Serbin and King. Specifically, he challenges Agent Serbin's response that he knew the appellant from softball games and because "being a law enforcement officer ... we had plenty of appointments together." He asserts that the state, in effect, introduced evidence of his character and other crimes before his character was placed in issue. The appellant has waived appellate review of this issue by failing to impose a contemporaneous objection. T.R.A.P. 36(a). However, we find no merit as Serbin's testimony was in response to the state's question regarding his basis for recognition of the appellant's voice.

The appellant further challenges Agent King's testimony regarding the December drug buy claiming it was inadmissible hearsay. This issue was addressed above in appellant's ineffective assistance of counsel claim. Although this evidence is hearsay, we find that its admission, if error, was harmless. T.R.A.P. 36(b); Tenn.R.Crim.P. 52(a). Issue three has no merit.

### IV

■ In his fourth challenge, the appellant asserts that the trial court erred in allowing the state to present improper opening and closing arguments. Technically, this issue is waived due to counsel's failure to impose contemporaneous objections. T.R.A.P. 36(a). However, the issue also fails on the merits.

Appellant's first challenge is to comments made by the prosecutor during opening argu-

ments. The assistant district attorney made the following comments:

> the State's going to prove today ... that the defendant is a street cocaine dealer.... And we actually pay Terry Cowan and other people like him to go out and buy drugs from people we know are selling drugs.

> .   .   .   .   .

> The proof is going to show that what Robert Seay sold, and the proof will come from up there, and if I'm wrong, then I'm wrong, but I think what the proof is going to show you is that he sold on two different occasions more than a half gram of cocaine.

> .   .   .   .   .

> After we present the proof, I'm going to ask you to find him guilty, because we need to stop street cocaine dealers just like we need to stop people bringing it by the truckload, or the tractor load. Because those truckloads and those tractor loads, they go somewhere. And where they go to are people like Robert Seay. The last chain in the distribution....

The appellant also challenges the statements made during closing arguments as follows:

> Because we know there was [sic] two cocaine sales.... All I'm asking you to do is just believe him [Cowan]. He told the truth from that stand, even though the truth was bad. He told the truth.... Remember Jeff Serbin testified, yes we had a lot of information Robert Seay is dealing drugs....

█ When an appellant raises the issue of prosecutorial misconduct, (s)he is required to show that the argument was so inflammatory or so improper that it affected the verdict to his or her detriment. *Harrington v. State*, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965). In *Judge v. State*, 539 S.W.2d 340 (Tenn.Crim.App.1976), this Court, citing *Harrington*, listed several factors to be considered in such a claim including the intent of the prosecutor, the curative measures under-

taken by the court, the improper conduct viewed in context and in light of the circumstances of the case, the cumulative effect of the remarks with any other errors in the record, and the relative strength or weakness of the case. *Id.* at 344.

█ The bounds of proper argument are established in large part by the facts in evidence, the character of the trial, and the conduct of opposing counsel. *See State v. Byerley*, 658 S.W.2d 134 (Tenn.Crim.App. 1983). The state and defense counsel must both be given the opportunity to argue the facts in the record and any reasonable inferences that may be drawn therefrom. *See Russell v. State*, 532 S.W.2d 268 (Tenn.1976).

█ The appellant's specific claims are that: (1) the state attempted to prejudice the jurors by classifying him as a drug dealer, (2) the state improperly argued deterrence, and (3) the state argued matters not in evidence. We disagree. As to his first attack, we find that the prosecutor's remark was a statement of his intention to show, through the proof, that the appellant was a drug dealer. Therefore, we find no unfair prejudice.

█ Next, he argues that the state improperly argued deterrence. The appellant cites *State v. Henley*, 774 S.W.2d 908 (Tenn. 1989), in support of his argument. *Henley* addressed the impropriety of arguing deterrence during the penalty phase of a death penalty case. We do not find it controlling in the instant case. This Court recently addressed a similar issue in *State v. Dalton*, No. 01C01–9408–CR–00291, 1995 WL 408230 (Tenn.Crim.App. July 11, 1995). In *Dalton*, the prosecutor urged the jury to "tell [the defendant] and every other young man out there that engages in this kind of activity, tell them we will not tolerate this." Slip op. at *2. Citing *State v. Dakin*, 614 S.W.2d 812 (Tenn.Crim.App.1980), this Court found that no error resulted from the prosecutor's statement during closing argument that punishing the defendant would have a deterrent effect on others. Slip op. at *2–3.[1] After viewing

---

1. In other decisions cited In *Dalton*, this Court found no reversible error. *See State v. Weems*, No. 89–276–111, 1990 WL 45697 (Tenn.Crim. App. Apr. 19, 1990, Nashville) (where prosecutor commented that the jury was the "voice for this community"), *see also Reed v. State*, 581 S.W.2d 145 (Tenn.Crim.App.1978) (harmless error where

the evidence in this case, we find no merit in this argument.

Finally, the appellant claims that the state argued matters not in evidence; however, he fails to point to specific instances. Upon review of the record, we find no support for such a claim.

### V

■ Fifth, the appellant complains of the trial court's failure to explore the condition of a juror who had been up all night prior to the second day of deliberation due to the death of his cousin. The trial court asked the juror if he felt he could continue to which he responded in the affirmative. The appellant concedes that no objection was made and no prejudice is shown from the record. Thus, this issue is waived.

### VI

In his sixth claim of error the appellant insists that he was denied a fair trial based on the cumulative error. Taking the record as a whole, having evaluated each issue and finding any error to be harmless, we conclude that the appellant was not denied a fair trial.

### VII & VIII

■ Issues seven and eight address the appellant's claim that the trial court should have *sua sponte* granted a mistrial. The decision whether to grant a mistrial is within the sound discretion of the trial court. *State v. Jones,* 733 S.W.2d 517, 522 (Tenn. Crim.App.1987). The trial judge's decision will not be overturned on appeal unless there was an abuse of that discretion. *Id.* A mistrial is usually appropriate in a criminal case only where there is a "manifest necessity." *Arnold v. State,* 563 S.W.2d 792, 794 (Tenn.Crim.App.1977). The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict. *Id.* The burden of establishing a "manifest necessity" lies with the appellant.

■ As to his first basis, he points to statements made by Agent Serbin which he claims gave the jury the impression that he had a prior record. Agent Serbin testified that he had known the appellant for two or three years and had played softball against him. Further, Serbin said that being a law enforcement officer, he and the appellant had had many "appointments." As discussed above, we do not find that this statement amounted to reversible error. Similarly, we do not find that Serbin's response created a "manifest necessity" justifying termination of the trial.

■ The appellant's second basis is the nature of the questioning of him by the state which informed the jury that he had been engaged in the plea bargaining process. The state asked the appellant whether the prospect of such a long sentence would motivate him to testify falsely. In an unresponsive manner, the appellant said, "If I'm guilty I wouldn't be here, I would plea bargain." It is true that evidence which would indicate that a defendant engaged in plea negotiations is forbidden. Tenn.R.Evid. 410. However, we do not find that the colloquy here reached that point. The appellant, not the state, brought the term "plea bargain" before the jury. Further, the state did not follow up on the appellant's response and when defense counsel attempted to touch on that area, the trial court sustained the state's objection and gave a curative instruction. We do not find that the mention of the term "plea bargain" without more, indicated that the appellant had been involved in that process.

The appellant has failed to meet his burden of showing that a manifest necessity justified the declaration of a mistrial. These issues are without merit.

### IX

In his final issue, the appellant contends that the trial court erred by failing to grant his motion for a new trial and recusal. He claims: 1) he was denied the effective assistance of counsel at the hearing on said motion, 2) the court evidenced a personal bias toward him, 3) the court sentenced him based on inaccurate information contained in

prosecutor told the jury they could "do some-

thing to show the public in general ...").

the presentence report, 4) the court publicly stated that the sentencing structure provided by the state legislature is a joke, 5) the court refused to accept the district attorney's recommendations for sentences and 6) the court erred in considering enhancement factor, Tenn.Code Ann. § 40–35–114(15).

■ The appellant claims that he was denied the effective assistance of counsel at the motion hearing in that counsel failed to file any mitigating factors, failed to ask questions or present witnesses and made only a brief statement. However, he fails to substantiate even one of these allegations that counsel's performance was deficient. Further, he has not shown how he was prejudiced by counsel's actions as required in *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. As discussed below the trial court sentenced the appellant within the purview of the Sentencing Reform Act. We find no merit in this argument.

■ The second argument within this claim is that the trial court evidenced a bias toward him at the sentencing hearing. At the hearing the trial judge, after reviewing the presentence report including the appellant's extensive record, said that "he [appellant] needs to be out of society" and "he's [appellant] just a real problem." At the conclusion of the motion for a new trial hearing, the trial judge explained that he held no bias towards the appellant. Instead, he was commenting on the appellant's record of continually committing offenses while on probation and the need for deterrence as set forth in the Sentencing Reform Act. We do not find that these comments show bias towards this particular appellant. Further, the resulting sentence does not reflect a departure from the established sentencing guidelines. This claim is without merit.

■ The appellant's fourth challenge is to a comment made by the trial judge which was published in the local newspaper. It seems the trial judge felt the sentencing structure provided by the state legislature "is a joke." However, he concedes that the record is devoid of evidence of this statement. We agree with the state that even if such information was contained in the record, the appellant has failed to show how such a comment adversely affected his sentence. This claim is without merit.

■ Because his third, fifth and sixth challenges within this issue attack some aspect of his sentence, we combine them for review. Our review of the sentence imposed by the trial court is *de novo* with a presumption that the determinations of the trial court are correct. Tenn.Code Ann. § 40–35–401(d) (1990); *State v. Byrd,* 861 S.W.2d 377, 379 (Tenn.Crim.App.1993). This presumption is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991).

In conducting our review, we consider the evidence presented at the sentencing hearing, the presentence report, the sentencing principles, arguments of counsel, statements of the defendant, the nature and circumstances of the offense, mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn.Code Ann. § 40–35–210(b) (1990); *Ashby,* 823 S.W.2d at 168.

The presumptive sentence shall be the minimum in the range if no enhancement or mitigating factors exist. Tenn.Code Ann. § 40–35–210(c). However, if both enhancement and mitigating factors exist, the court must start at the minimum sentence in the range and enhance the sentence within the range as appropriate. Then the trial judge will reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40–35–210(d) & (e).

■ Sale of cocaine over .5 grams is a Class B felony. Tenn.Code Ann. § 39–17–417(b) (1991). As a Range II multiple offender, the appellant faced a sentence range of twelve to twenty years on each of the two counts. Tenn.Code Ann. § 40–35–112(b)(2) (1990). The trial judge found as enhancement factors that: the appellant had a previous history of criminal activity in addition to that necessary to establish the range, he had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, the felonies were

committed while the appellant was on release status in the community from a prior conviction, and the appellant abused a position of public trust. Tenn.Code Ann. § 40–35–114(1), (8), (13) & (15) (1990). Applying these factors, the trial judge enhanced the appellant's sentence to fifteen years on each count.

In challenging his sentence, the appellant argues that Tenn.Code Ann. § 40–35–114(15) should not have been applied. The trial court found that because probation was a form of public trust placed in the appellant, his continued criminal activity breached this trust. We disagree. We find no support for the application of this factor in this context. This factor should not have been applied.

The appellant does not challenge the remaining factors. Nonetheless, we find that the record supports the application of the remaining enhancement factors. These factors alone support the enhancement of the appellant's sentence to fifteen years.

Although not raised as a separate issue, the appellant claims that concurrent sentences would have been more appropriate to punish him and to protect society. Where a defendant is convicted of more than one criminal offense, the court may order the sentences to run consecutively if the court finds by a preponderance of the evidence that: the defendant is a professional criminal who had knowingly devoted himself to criminal acts as a major source of livelihood; or the defendant is sentenced for an offense committed while on probation. Tenn.Code Ann. § 40–35–115(b)(1) & (6) (1990). Here, the trial court made a finding that based on the appellant's extensive history of criminal behavior, consecutive sentences were appropriate. Further, the court made the additional finding that the appellant committed the offenses while on probation. We find that the record supports the imposition of consecutive sentences.

The appellant also argues that the trial court sentenced him based on inaccurate information contained in the presentence report. He claims that this "inaccurate information" is the trial judge's failure to consider the final disposition of many of the charges contained in the report. Appellant states that the trial judge "assumed" that because he had been charged with numerous offenses, he must be guilty of them. The presentence report contains an abundant criminal history on the part of the appellant. While many of the charges were dismissed, we find that others resulted in convictions. We are unable to look into the mind of the trial judge to determine his assumptions. Further, so long as the trial judge follows the established sentencing guidelines, we will find no error.

In his next claim, he insists that the trial court erred by failing to accept the recommendations of the assistant district attorney general. The state recommended that the appellant receive concurrent twelve year and fourteen year sentences, respectively, suggesting however, that these sentences run consecutively to a previous 1990 sentence. The trial judge flatly refused to accept the recommendation saying that after reviewing the record, he would "turn that [state's recommendation] down." The trial court is not required to accept the sentences recommended by the state, even if agreed to by the appellant. Tenn.Code Ann. § 40–35–203(b) (1990). The appellant's final issue is meritless.

The judgment of the trial court is, in all respects,

**AFFIRMED.**

JONES, P.J., and TIPTON, J.