IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2001

## STATE OF TENNESSEE v. JAMES DAVID ALDER

**Appeal from the Circuit Court for Franklin County
No. 12714     Buddy D. Perry, Judge**

---

### No. M2000-01804-CCA-R3-CD - Filed October 25, 2001

---

The defendant, James David Alder, appeals from his convictions and sentences which he received in the Franklin County Circuit Court. After a change of venue from Sequatchie County and a jury trial in Franklin County, the trial court imposed the following convictions and sentences: aggravated assault, ten years (Range II); kidnapping, ten years (Range II); and unlawful possession of a deadly weapon, eleven months and 29 days (Class A misdemeanor). The trial court ordered the felony sentences to run consecutively to each other but concurrently with the misdemeanor, for an effective sentence of twenty years. On appeal, the defendant complains that the trial court erred (1) in refusing to grant a mistrial after the victim testified that she had obtained an order of protection against the defendant and (2) in imposing the sentences. After our review of the record, the briefs of the parties, and the applicable law, we affirm the lower court's felony judgments but vacate and modify the misdemeanor judgment.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed in Part;
### Vacated and Remanded in Part.

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

B. Jeffery Harmon, Jasper, Tennessee, for the Appellant, James David Alder.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; James Michael Taylor, District Attorney General; and Steven Strain, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

In the summer of 1998, the defendant's then wife of fourteen years, Casey Alder Davidson, left him. Before moving into her mother's home, she spent a few days at the Sequatchie County home of the victim, Marie Austin. On July 16, 1998, after Ms. Davidson departed for her mother's residence, the defendant came to the home of the victim, who was talking on the telephone

at the time with her friend, Wanda. Upon seeing the defendant, the victim instructed Wanda to call 911 if anything happened. Uninvited, the defendant stuck his head inside the door and asked, "Where's my wife?" When told she was not present, the defendant kicked the door open, entered, and "put a shotgun up and stuck it to [the victim's] head and told [her] he was going to blow [her] f------- brains out."

After hanging up the phone, the victim showed the defendant a note that his wife had written. In it, Ms. Davidson stated that she was going to her mother's house. The defendant pressed the shotgun against the victim's stomach and ordered her to telephone Ms. Davidson. When Ms. Davidson came to the phone, the victim asked her to come back to the victim's house, and when Ms. Davidson asked whether the defendant was there, the victim said, "Right now would be nice." As the defendant continued to "poke" the shotgun into her stomach, the victim urged Ms. Davidson to come. Sensing that the defendant was there, Ms. Davidson asked whether he had a gun. Because she feared for her life, the victim never acknowledged the defendant's armed presence. After hanging up the phone, the victim asked the defendant what he intended to do. He replied, "When [Ms. Davidson] gets here, we're going out on the carport, [and w]hen she gets out, I'm going to shoot you and let her watch you die so she'll have to live with it for the rest of her life, knowing that she caused her friend's death." The defendant said that, next, he intended to shoot himself.

The victim testified that she believed the defendant's threats and that she was scared. She believed, however, that Wanda had called the police. Indeed, after the defendant had held the victim at gunpoint for approximately 25 to 30 minutes, Sequatchie County Chief Deputy Randall Lockhart arrived in his car.[1] Upon seeing the officer approach the house, the defendant remarked, "You'll get to watch this cop die before you." He then instructed the victim to "get rid" of the officer.

Seeing through a window the distressed look on the victim's face and seeing the defendant standing nearby, Chief Lockhart came into the house. Although the defendant tried to grab the victim, she fled into the rear of the house where her young daughter was sleeping. Lockhart struggled with and subdued the defendant. He wrested away from the defendant a single-shot, twelve-gage shotgun and handed it to Dunlap Police Officer Coy Swanger, who had just arrived on the scene. The shotgun proved to be loaded, and the officers found six more twelve-gage shells in the defendant's pocket.

The defendant offered no proof in the case.

The jury convicted the defendant of aggravated assault, kidnapping, and unlawful possession of a weapon. *See* Tenn. Code Ann. §§ 39-13-102(a)(1)(B), 39-13-303, 39-17-1307 (1997).

---

[1] Apparently, the phone on which Ms. Davidson spoke with Ms. Austin was restricted so that Ms. Davidson could not call long distance to the Sequatchie County Sheriff's Office. She drove to the Sheriff's Office, but by the time she had arrived, Chief Lockhart had already gone to Ms. Austin's house.

# I

In his first appellate issue, the defendant complains that the trial court erred in refusing to order a mistrial. During cross-examination of Marie Austin, the defendant's counsel questioned her about whether her testimony at the preliminary hearing was inconsistent with her trial testimony. When asked if she had failed to mention during the preliminary hearing that the defendant had threatened to kill Chief Lockhart, she said that this statement was in her affidavit for the arrest warrant. When told that the affidavit did not contain this information, she inquired, "Is it on my order of protection?" The defendant made no contemporaneous objection, but following Ms. Austin's testimony, the court held a sidebar conference. Although the conference was not contemporaneously placed of record, the court, out of the presence of the jury and following the closing of the evidence in the case, memorialized the substance of the sidebar conference by indicating that the defendant had moved for a mistrial because of the reference to an order of protection. Defense counsel stated that he had objected because the remark was "non-responsive and prejudicial." The trial judge ruled that the answer on cross-examination was a "fair response." The trial judge stated that he had denied the motion for a mistrial. On appeal, the defendant maintains that the trial court erred, not in admitting into evidence Ms. Austin's remark, but in refusing to grant a mistrial.

The entry of a mistrial is appropriate when the trial cannot continue for some reason, or if the trial does continue, a miscarriage of justice will occur. *State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). "A mistrial is usually appropriate in a criminal case only where there is a 'manifest necessity.'" *State v. Seay*, 945 S.W.2d 755, 764 (Tenn. Crim. App. 1996). The burden of showing manifest necessity rests upon the defendant. *Id.* The decision to grant a mistrial lies within the sound discretion of the trial court, and this court will not disturb the trial court's determination unless a clear abuse of discretion appears on the record. *McPherson,* 822 S.W.2d at 370.

In the present case, there is no showing of an abuse of discretion in denying the declaration of a mistrial. The only articulated basis for a mistrial is that the victim's remark was "non-responsive and prejudicial." The defendant cites no rule of evidence nor other authority to support his apparent belief that the testimony was inadmissible. Tennessee Rules of Evidence 402, 403, and 404(a) generally come to mind, but the defendant cited them neither to the trial court nor to this court. Complaining only that the victim was unresponsive to his cross-examination and that her remark was harmful to his interests does not, without more, suggest the use of inadmissible evidence. Nevertheless, the trial court determined that the remark was a fair response to the line of cross-examination being pursued – that is, that the victim had never before alleged that the defendant had threatened to kill Chief Lockhart.

We agree with the trial court and cannot say that the trial court erred in refusing to order a mistrial, despite its failure to give cautionary instructions to the jury. We hold that the trial court did not abuse its discretion.

## II

In his next issue, the defendant complains that the trial court erred in ordering consecutive felony sentences and in imposing a Class A misdemeanor sentence for the weapon-possession charge.

The latter issue may be dealt with in short order. The state concedes that the weapon-possession offense charged in count three is a Class C misdemeanor, not a Class A misdemeanor. *See* Tenn. Code Ann. § 39-17-1307(a) (1997). The authorized term of confinement for a Class C misdemeanor is a term "not to exceed thirty (30) days." Tenn. Code Ann. § 40-35-111(e)(3) (1997). Accordingly, the judgment for count three must be modified to reflect a conviction of a Class C misdemeanor. Because the trial judge imposed a maximum sentence of eleven months and 29 days when he believed he was sentencing for a Class A misdemeanor, we discern no need to remand the case for re-sentencing. We impose a sentence of 30 days in count three.

With respect to the issue of consecutive sentencing, we begin by noting that the trial court premised its imposition of consecutive felony sentences upon its finding that the defendant is a "dangerous offender whose behavior indicates little or no regard for human life." *See* Tenn. Code Ann. § 40-35-115(b)(4) (1997) (enumerating the "dangerous offender" category as one of the seven categories that supports consecutive sentencing).

When basing consecutive sentencing upon the dangerous offender rubric of Code section 40-35-115(b)(4), the trial court must determine that the combined terms relate to the severity of the offenses and are required to protect the public from further serious criminal conduct of the defendant. *State v. Lane,* 3 S.W.3d 456 (Tenn. 1999).

The defendant argues that consecutive sentencing, which yields an effective sentence of 20 years, is unrelated to the severity of the offenses. He premises this argument upon the fact that the victim of the crimes was not injured.

Before addressing this specific issue, we note that, in finding that an extended sentence was necessary to protect the public, the trial court referred to the following proof presented at the sentencing hearing. A few weeks after the defendant committed the offenses against Marie Austin, he accosted Ms. Davidson at her place of employment and shot her with a shotgun, leaving her in a coma for seven weeks. Ultimately, she survived the attack. A few days before the scheduled sentencing hearing in this case in which Ms. Davidson was expected to (and did) testify, the defendant escaped from jail and was apprehended in the woods approximately 250 yards from Ms. Davidson's home.

We believe this evidence supports the trial court's conclusion that the combined sentences are proportionate to the severity of the offenses committed against Ms. Austin, despite the fact that she was uninjured. The trial judge clearly accredited Ms. Davidson's testimony at the sentencing hearing that, a few days after the kidnapping and shotgun assault of Ms. Austin, the

defendant committed a murderous shotgun assault against Ms. Davidson that put her into a seven-week coma. This episode illuminates the defendant's sinister intent when he threatened to shoot Ms. Austin in Ms. Davidson's presence and suggests that, but for Chief Lockhart's intervention, Ms. Austin might well have been gravely wounded or killed. Ms. Austin believed the defendant would carry out his threats against her, and apparently, so did the trial judge. That conclusion is supported in the record and elevates the seriousness of the conviction felonies to a level that is commensurate with the extended sentence imposed. *Cf. State v. Chad Douglas Poole*, No. 02C01-9506-CC-00178, slip op. at 5-6 (Tenn. Crim. App., Jackson, Jan. 31, 1996) (in determining applicability of enhancement factor (1), sentencing court may consider criminal convictions or behavior which occurred "prior to the sentencing hearing as constituting a previous history of criminal convictions or criminal behavior, regardless of whether the convictions or behavior occurred before or after the criminal conduct under consideration"), *aff'd on other grounds*, 945 S.W.2d 93 (Tenn. 1997).

Based upon the analyses given above, we affirm the judgments in the felonies and vacate and modify, but otherwise affirm, the misdemeanor judgment.

_____
JAMES CURWOOD WITT, JR., JUDGE