IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2012 Session

## STATE OF TENNESSEE v. TAMMY MARIE WILBURN

**Appeal from the Circuit Court for Blount County**
**No. C-17933    David R. Duggan, Judge**

---

**No. E2011-01207-CCA-R3-CD - Filed January 23, 2013**

---

The Defendant, Tammy Marie Wilburn, was convicted by a Blount County Circuit Court jury of attempt to commit aggravated arson, a Class B felony. See T.C.A. § 39-14-302 (2010). The trial court sentenced the Defendant as a Range I, standard offender to twelve years' confinement. On appeal, the Defendant contends that the prosecutor's statements regarding his personal beliefs of witness credibility is reversible error. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Stanley R. Barnett, Maryville, Tennessee, for the appellant, Tammy Marie Wilburn.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Rocky H. Young, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a house fire in which Eddie Ledbetter was injured. At the trial, Blount County Sheriff's Deputy Chris Morgan testified that he responded to a house fire on Old Niles Ferry Road around 4:00 p.m. on January 28, 2009, and that when he arrived, he saw a home fully engulfed in flames. He said the firemen had yet to begin extinguishing the fire. He said that he heard a man, later identified as Eddie Ledbetter, yelling for help, that he and some of the firemen helped carry Mr. Ledbetter outside the home, and that Mr. Ledbetter was unconscious by the time they took him outside. He said Mr. Ledbetter had

visible signs of smoke inhalation around his nose and was unresponsive for a few minutes. He said that medical treatment was provided and that Mr. Ledbetter became responsive before being taken to the hospital. On cross-examination, Deputy Morgan stated that he spoke briefly to Mr. Ledbetter before he was taken to the hospital and that Mr. Ledbetter said the Defendant might be inside the home.

Blount County Sheriff's Department Detective Mike Seratt, an expert in the field of arson investigation, testified that when he arrived at 4:30 p.m., he saw Mr. Ledbetter lying on a gurney and receiving medical treatment. He identified a photograph of Mr. Ledbetter's saliva collected at the hospital showing that Mr. Ledbetter inhaled smoke and soot. He identified photograph exhibits that showed extensive fire damage to the front right side of Mr. Ledbetter's home. He concluded that the fire originated in a closet inside one of the bedrooms based on the amount of fire damage, fire patterns, char marks, and the manner in which the fire moved. He excluded the cause of the fire as accidental or electrical and concluded that the fire began with an open flame. He did not find any evidence of an accelerant.

Detective Seratt testified that Mr. Ledbetter was the only person found inside the home, although he received information that the Defendant was also inside. He said his investigation led him to conclude that the Defendant started the fire. He said he arrested and interviewed the Defendant. He said the Defendant denied starting the fire. He said his investigation showed that Denise Newman may have been at Mr. Ledbetter's home before the fire began and that Ms. Newman argued with the Defendant. He identified a photograph of a jewelry box, a candle, and candle wax lying on gravel outside the home and said he could not conclude with any certainty that the candle caused the fire. He did not know how the items got outside.

On cross-examination, Detective Seratt testified that the burn patterns from where the fire originated showed that the bedroom door was open. He could not state whether the bedroom window was open. He agreed that wax was found on the front "stoop" near the front door and that the candle found outside was taken through the front door. He identified a photograph of a lighter and a remote control found inside the home at the side door. He identified two photographs of two additional lighters. He said he did not determine who owned the lighters.

Detective Seratt testified that the Defendant was photographed two days after the house fire for evidence of bruises and scratches. He identified a photograph showing a "lump" and a bruise on the Defendant's right arm. He identified photographs showing a scratch on the Defendant's index finger, a swollen left knee, a one- to three-inch bruise on her right rib cage, scratches on her right hand and thumb, and a scar on her right knee.

On redirect examination, Detective Seratt testified that the door leading to the bedroom where the fire originated was open at some point during the fire. He agreed Mr. Ledbetter smoked cigarettes. He denied knowing if any of the lighters ignited the fire. He said the Defendant stated during her interview that the injuries to her knees and legs were caused by Mr. Ledbetter, although Detective Seratt could not state with any certainty whether the Defendant received her injuries from Mr. Ledbetter or from jumping out a window and landing on the ground. On recross-examination, he stated that he could not exclude the lighters as the ignition source of the fire. He said the Defendant told him that Mr. Ledbetter struck her with a metal pipe, which was consistent with the Defendant's rib bruises.

Steve Ledbetter testified that he lived at 4755 Old Niles Ferry Road and that he was Eddie Ledbetter's brother. He said he was the sole owner of the property and home in which his brother lived. He said he did not give anyone permission to burn his property. He said that the Defendant was his cousin and that he had known her all his life. He said that his brother was forty-six or forty-seven and that he was the conservator over his brother's affairs. He said his brother had difficulty writing, reading, and understanding. He said attorney Daphne Moffatt was his brother's guardian ad litem. He said his brother was "run over by a car" while riding his bicycle when he was a child and was hospitalized for about three months. He said his brother did not work.

Steve Ledbetter testified that he, his brother, and the Defendant went to town around 11:00 the morning of the fire. He said the Defendant stayed periodically at his brother's home. He said the Defendant did not work and had no place to live. He said that his brother bought beer and that the Defendant bought a one-half pint bottle of tequila. He said he left them at his brother's home around 12:30 p.m. and went home. He denied hearing his brother and the Defendant argue. He said the Defendant called him around 2:30 p.m. offering him homemade chili.

Steve Ledbetter testified that he knew Denise Newman, who came to his brother's home around the time his brother received his money each month. He said he asked Ms. Newman to stay off his property and to stop taking his brother's money. He said that on the day of the fire, he saw Ms. Newman's car at his brother's home and that Ms. Newman was there for about fifteen to twenty minutes. He said that after the housefire, he had Ms. Newman arrested for trespassing on his property.

Steve Ledbetter testified that he called his brother around 3:00 or 3:30 p.m. the day of the fire and that he heard the Defendant while speaking to his brother. He said that about twenty minutes later, he saw smoke coming from his brother's home, that he ran to the home, and that he yelled for his brother and the Defendant. He said he told the firemen the Defendant's bedroom was on fire. He said that fire was coming from the Defendant's open

bedroom window and that the window was usually closed. He denied witnessing an argument between the Defendant and Ms. Newman or an argument between his brother and the Defendant. He said the Defendant did not say anything about his brother's hitting her with a metal pipe.

Steve Ledbetter testified that he stayed at the scene after his brother was taken to the hospital and that he realized the Defendant was not inside the home when a fireman said there was not a human body inside the home. He denied having a reason to burn down the house and denied being behind on the mortgage. He denied that his brother attempted suicide in the past, that his brother was upset with him, or that his brother threatened to burn down the house. He admitted that he threatened to burn the Defendant's belongings two weeks before the fire. He said that the Defendant stored her belongings in his home's leaky basement, that her belongings were molding and causing an odor, and that he threatened to burn her belongings if she did not remove them from his basement. He said the belongings were removed after the fire. He denied threatening to burn the Defendant's belongings that were kept at his brother's house.

Steve Ledbetter testified that he could tell if his brother were intoxicated, that his brother had to drink at least twelve beers to be intoxicated, and that there were three beers missing from the twelve-pack. He said his brother did not drink liquor. He denied that his brother was intoxicated on the day of the fire.

On cross-examination, Steve Ledbetter testified that his brother was mentally disabled and denied that his brother spent time in a mental institution. He said his brother took medicine for bipolar disorder. He admitted that he was not with his brother all day before the fire and that he did not know if his brother drank liquor that day. He agreed his brother had a problem with beer and had been arrested for driving under the influence and possession of marijuana. He agreed his brother had been drinking the morning of the fire but said his brother did not have "that much." He said his brother did not take his medication that morning. He admitted he did not know what happened inside the home.

Paul Edward "Eddie" Ledbetter testified that he lived at 4749 Old Niles Ferry Road, that the Defendant was his cousin, and that he had convictions for "possession," being a habitual motor vehicle offender, and driving under the influence. He said the Defendant came to his house twice the day of the fire. The Defendant arrived about 10:00 or 11:00 a.m. to go to the store with him and his brother. He purchased beer, and the Defendant bought a bottle of tequila. He said that his brother drove them to his house and that the Defendant left. He denied knowing where the Defendant went when she left and said she returned after lunch. He recalled the Defendant's stating she was going to make chili and her calling his brother to offer him a bowl.

-4-

Eddie Ledbetter testified that he met Denise Newman through the Defendant and that Ms. Newman came to his home the day of the fire. He said Ms. Newman brought the Defendant back to his home around 3:30 or 3:45 p.m. He said that the Defendant and Ms. Newman began to argue and that the argument did not become physical. He identified the jewelry box found at the scene as belonging to his sister and said the Defendant threw it at Ms. Newman's car. He said Ms. Newman left when he threatened to call the police. He said that the Defendant entered the home and that he watched television. He said he smelled smoke about fifteen minutes later.

Eddie Ledbetter testified that he ran through the hall, kicked open the Defendant's bedroom door, and saw the fire inside the closet. He said he ran outside to connect the water hose and attempted to extinguish the flames. He said he "passed out" on the kitchen floor attempting to put out the flames. He said that before he lost consciousness, he saw the Defendant leave the home and run toward the woods and that he called 9-1-1. He denied starting the fire and said the Defendant was the only other person inside the home that day.

Eddie Ledbetter testified that the Defendant stayed at his home periodically. He said his brother told him to tell the Defendant that he was going to burn her belongings if she did not remove them from the basement. He said he relayed the information to the Defendant.

On cross-examination, Eddie Ledbetter testified that he did not drink alcohol on the morning of the fire and that he did not begin drinking until lunchtime. He said he took the medication at bedtime to treat bipolar disorder but admitted it was possible he took the medication that morning. He said he was not supposed to drink alcohol while taking his medication. He admitted that he did not testify at the preliminary hearing that he saw the Defendant run toward the woods. He stated that although he thought the water hose lost pressure, he agreed that he testified at the preliminary hearing that the hose was not connected to the spigot.

Eddie Ledbetter testified that the Defendant had stayed at his home for the two days before the fire and agreed that he stated at the preliminary hearing that the Defendant had not stayed at his home during the two weeks before the fire. He agreed he stated at the preliminary hearing that the Defendant did not have any belongings in his home, although the Defendant had some belongings in his home at the time of the fire.

Eddie Ledbetter testified that he was not upset with the Defendant the day of the fire and denied making sexual advances toward the Defendant. He said that he did not hit the Defendant with his fists or a steel bar and that he did not shove her out the front door causing her to fall on concrete.

Denise Newman testified for the defense that she had known the Defendant for years and that she knew the Ledbetters through the Defendant. She thought she and Eddie Ledbetter were friends. She said that she had seen Mr. Ledbetter drink to excess and that when he drank, he acted "crazy" and talked to himself. She said Mr. Ledbetter tried to fight people when he was drinking.

Ms. Newman testified that she saw Eddie Ledbetter the week before the fire, that he was drinking, and that "he seemed like he wanted rid of [the Defendant]." She denied being at Mr. Ledbetter's home the day of the fire but said she was there earlier that week. She said that the Defendant lived with Mr. Ledbetter at the time and that she saw the Defendant while she was there. She said she helped the Defendant move her belongings into Mr. Ledbetter's home. She said the Defendant had furniture in the basement. She denied that someone borrowed or used her car the day of the fire. She stated that she did not have an argument with the Defendant on the day of the fire. She admitted she had a history of smoking marijuana and drinking beer.

On cross-examination, Ms. Newman testified that she did not "have anything against [Eddie Ledbetter] other than that marijuana deal." She said Mr. Ledbetter gave her and her father a check drawn from Mr. Ledbetter's account and made payable to Mr. Ledbetter. She said that she drove Mr. Ledbetter to her father's house and that he asked her father to cash the check for him. She said her father cashed the check and gave the money to Mr. Ledbetter. She denied stealing the check and said she knew Steven Ledbetter controlled Eddie's financial accounts. She agreed Steven Ledbetter stopped payment on the check.

Ms. Newman testified that she was at Mr. Ledbetter's home twice in the two weeks before the fire and that she was there the day before the fire. She denied that she and the Defendant fought over cocaine or crack cocaine and said that she and the Defendant had never argued. She denied the Defendant's throwing a jewelry box at her the day of the fire and having any problems with Steven Ledbetter. She agreed Steven Ledbetter called the police "over the crack deal." She agreed the police were called regarding Eddie Ledbetter's check.

Clara Wilburn testified that she was the Defendant's mother and that the Ledbetter brothers were her nephews by marriage. She said that Eddie Ledbetter was a heavy drinker and that he wanted to argue and fight when he was intoxicated. She said that after Mr. Ledbetter was released from the hospital, he left the hospital with an IV still in his arm. She said Mr. Ledbetter told her that he was supposed to get thousands of dollars from the insurance company and that he was going to use the money to pay his fines, to pay his brother's debts, and to build a log cabin.

Ms. Wilburn testified that the Defendant lived with her for a while, that the Defendant moved out, and that the Defendant moved in with Eddie Ledbetter. She said the Ledbetter brothers told her that the Defendant was living with Eddie. She said she and the Defendant had "a disagreement" about "some behaviors" at a Christmas party just before she moved in with Mr. Ledbetter.

On cross-examination, Ms. Wilburn testified that she did not dispute that the Christmas party occurred on December 13, 2008, and said that the Defendant did not live with her from December 13 to the day of the fire. She denied that Eddie Ledbetter stayed the night at her home after he left the hospital. She denied talking to the Defendant about the fire and denied the Defendant's asking to stay at her home after the fire.

Ms. Wilburn testified that the last time she saw Eddie Ledbetter fight was several years before her testimony and that he jumped on her husband and sprayed her husband with pepper spray. She knew Ms. Newman through the Defendant and said Ms. Newman was welcome in her home.

The Defendant testified that after she was involved in a car accident, she moved in with Eddie Ledbetter. She said her belongings were inside the bedroom where the fire began. She said that she was bedridden for two weeks and that during the third week, Mr. Ledbetter became verbally abusive. She tried to stay in her bedroom as much as possible, which made Mr. Ledbetter angry. She said that when Mr. Ledbetter became intoxicated, he made "rude remarks" and made sexual "gestures toward[] her body." She said this made her uncomfortable. She denied telling anyone about his behavior. She denied that Eddie and Steven Ledbetter threatened to burn her belongings if they were not moved.

The Defendant testified that the night before the fire one of Eddie Ledbetter's friends stopped by the home, that they stayed in the living room, and that she stayed in her bedroom. She said that at 5:00 a.m., the radio was playing loudly and that Mr. Ledbetter was yelling. She said she got out of bed and entered the living room. She said that she began talking to Mr. Ledbetter's friend and that Mr. Ledbetter did not like it. He told his friend that the Defendant was his girlfriend. She said that after his friend left, Mr. Ledbetter became furious, flipped her chair over, and swung a steel rod at her. She said that Steven Ledbetter took her and Eddie to the store later that morning.

The Defendant testified that Eddie Ledbetter was intoxicated when Steven Ledbetter took them to the store. She said that she and Eddie Ledbetter entered the liquor store, that she bought a bottle of Black Velvet, and that she put the bottle in the truck. She said that they entered the grocery store and that she bought beer and other items. She said they returned home and that Eddie began to "kill the whole bottle" of liquor. She said that she put

three beers in the refrigerator and the remainder under her bed and that he came through her bedroom door with the steel pipe and destroyed all her personal belongings. She said that he swung the pipe at her, that she put up her arms, and that he struck her with the pipe. She said he grabbed her and threw her out the front door. She identified the photographs of her injuries and said they were caused by Mr. Ledbetter.

The Defendant testified that she did not see her bedroom on fire and denied that she started the house fire. She stated that after Mr. Ledbetter threw her out the front door, she stood up and ran into the woods to get away from him and that she hid there until nightfall. She said that after nightfall, she began to walk toward her friend Gina's restaurant.

On cross-examination, the Defendant testified that the car accident occurred after she moved from her mother's home and after she moved her belongings into Eddie Ledbetter's home. She said that although she did not want to socialize with Eddie and his friend the night before the fire, she had sexual intercourse with Eddie's friend. She said his name was James, though she did not know his last name. She denied that James paid her for sex and said that the money she used at the grocery and liquor stores came from selling one of her chairs to James' sister before she met James.

The Defendant testified that although Steven Ledbetter was a dependable person and that she could have called him when Eddie Ledbetter assaulted her, she was only thinking about getting away from Eddie. She acknowledged she did not call her mother or the police for help. She denied that she could have stayed with Ms. Newman and said she "stopped associating" with Ms. Newman in 2007 because of "the things that she was doing and an incident that happened in her life." She said that Ms. Newman came to Mr. Ledbetter's home twice in the two weeks before the fire to obtain "his pills and . . . money." She agreed Ms. Newman took advantage of Mr. Ledbetter.

The Defendant testified that Mr. Ledbetter threw her out the front door before noon and that she hid in the woods from noon until nightfall. She did not recall calling Steve Ledbetter to ask him if he wanted a bowl of chili. She said she stayed the night with her friend Gina. She said she did not learn of the house fire until the next day when she was arrested at Walmart. She said, though, that the cuts and scratches possibly came from the fire and running through the woods.

On redirect examination, the Defendant testified that she did not see or argue with Ms. Newman the day of the fire. She identified the photograph of her jewelry box on the ground outside the home and said she last saw the box on her dresser before Eddie Ledbetter entered her bedroom with the metal pipe.

Eddie Ledbetter was recalled as a rebuttal witness and testified that he did not strike the Defendant with a steel pole on the day of the fire and that he did not destroy any of her personal belongings. He denied being angry that the Defendant had sex with his friend. He said that although there was rebar in the basement, there was none upstairs. He denied drinking the bottle of liquor.

On cross-examination, Eddie Ledbetter testified that he did not keep a piece of rebar behind the front door for protection. He said he thought the Defendant drank the liquor and did not know if the bottle was found. He said that his friend's name was Jake, that they were not drinking, and that nobody was at his home after dark. On redirect examination, he stated that Jake was at his home before he and the Defendant left to go to the grocery and liquor stores.

Upon this evidence, the jury convicted the Defendant of attempt to commit aggravated arson. The trial court sentenced her to twelve years' confinement. This appeal followed.

The Defendant contends that the prosecutor's comments during his closing argument regarding his personal beliefs about witness credibility rises to the level of reversible error. The State contends that Defendant waived the issue because she failed to raise the issue in her motion for a new trial. Alternatively, the State responds that although the prosecutor's statements were improper, the statements did not rise to reversible error. We agree with the State that the statements were not reversible error.

During closing argument, the prosecutor told the jury that the critical issue in the case was whether the Defendant was at the home at the time the fire started. He told the jurors that if they believed the Defendant left the home around noon, the State failed to prove its case beyond a reasonable doubt. He said that "Steve Ledbetter is, to me, an incredibility [sic] credible witness for you to listen to." He reminded the jury that Mr. Ledbetter testified that he spoke to the Defendant around 2:30 p.m. the day of the fire about whether he wanted chili and that he spoke with his brother about thirty minutes before the fire and heard the Defendant in the background. He said he believed the Defendant was at the home around the time of the fire. The Defendant did not object.

The prosecutor stated that the Defendant's testimony was "absolutely incredible, to me, to sit and listen to." With regard to Ms. Newman, the prosecutor stated, "Her situation and her lifestyle [was] such that it's almost impossible for me to believe anything [she said]." He said that he thought Ms. Newman was at Mr. Ledbetter's home the day of the fire because Steven Ledbetter saw her car at the home. Although the Defendant did not object, the prosecutor said, "Let me step back. Because it doesn't matter what I believe and I shouldn't even be using that phrase. And I apologize for saying that I believe."

The prosecutor told the jury that the Defendant's theory that Eddie Ledbetter started the fire while he remained inside the home was "absolutely incredible." With regard to the Defendant's hiding in the woods until nightfall, the prosecutor stated that although he believed the Defendant hid in the woods, he "did not believe for an instant. . . ." The prosecutor stopped himself from finishing the statement and apologized to the court. The prosecutor stated that the "logical conclusion" was that the Defendant hid in the woods because she started the fire inside the home.

During the State's rebuttal argument, the prosecutor addressed some of the inconsistencies in Eddie Ledbetter's testimony and told the jury that he did not think Mr. Ledbetter lied during his testimony. The Defendant objected, and the trial court sustained the objection. The prosecutor asked the court, "Did I say it again, Judge?" The court told the prosecutor to "stay away from what you think." The prosecutor apologized and said he "didn't realize [he] said it that time." The Defendant did not ask for an immediate curative instruction, and the trial court did not provide an instruction.

As a preliminary matter, we note that the Defendant did not include this issue in her motion for a new trial. The State argues that failure to include the issue in the motion for a new trial results in waiver of the issue on appeal. See T.R.A.P. 3(e) (stating "that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the . . . misconduct of . . . counsel . . . committed or occurring during the trial of the case, . . . unless the same was specifically stated in a motion for a new trial"). Because the Defendant failed to include the issue in her motion for a new trial, we are limited to plain error review. See T.R.A.P. 36(b).

> Our supreme court has adopted the factors developed by this court to be considered
>
> when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The record must establish all five factors before plain error will be recognized and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Smith, 24 S.W.3d at 283. In order for this court to reverse the judgment of a trial court, the error must be "of such a great magnitude that it probably changed the outcome of the

[proceedings]," and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." Adkisson, 899 S.W.2d at 642.

Our supreme court has stated that "closing arguments are a valuable privilege that should not be unduly restricted." Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001). The State and the Defendant "must both be given the opportunity to argue the facts in the record and any reasonable inferences that may be drawn therefrom." State v. Seay, 945 S.W.2d 755, 763 (Tenn. Crim. App. 1996). "Argument[s] must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999). There is "greater leeway in arguing their positions before the jury, and the trial court has significant discretion in controlling these arguments." Terry, 46 S.W.3d at 156. A trial court's decision regarding closing arguments will be reversed only upon an abuse of discretion. Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975).

When a statement made during a closing argument is improper, "the test for determining if reversal is required is whether the impropriety 'affected the verdict to the prejudice of the defendant.'" State v. Cribbs, 967 S.W.2d 773, 783 (Tenn. 1998) (quoting Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965)). The factors to consider include the conduct at issue viewed in light of the facts and circumstances of the case, any curative actions by the trial court, the intent of the prosecutor's improper statement, the cumulative error of the improper statement and any additional errors in the record, and the strength or weakness of the case. Id.

We note that the Defendant only objected once to the prosecutor's improper statements. There were multiple objectionable statements made by the prosecutor, and because the Defendant did not object, she did not avail herself from preventing error. The prosecutor's statements about his personal assessment of witness credibility were improper, and the State concedes the statements were improper. We cannot conclude, though, that the prosecutor's statements more probably than not affected the outcome of the trial. See T.R.A.P. 36(b).

When the prosecutor realized he improperly commented on the credibility of the witnesses, he stopped his argument and told the jurors that it did not matter what he believed and that he was wrong for telling the jurors what he believed or disbelieved. When the prosecutor made an additional statement regarding his disbelief of the Defendant's testimony, he stopped himself again, apologized to the trial court, and rephrased his statement to address the "logical conclusion" to be drawn from the evidence. The prosecutor made one final improper statement, and the Defendant made her only objection. The court admonished the

prosecutor for his statements. The prosecutor did not make another improper statement. We conclude that although the prosecutor made statements about his personal beliefs in the credibility of the witnesses, the record fails to show that the comments affected the outcome of the trial. See Adkisson, 899 S.W.2d at 642.

Although evidence was presented that called into question Eddie Ledbetter, Ms. Newman, and the Defendant's credibility, the record does not show evidence impugning the credibility of Detective Seratt and Steven Ledbetter. Detective Seratt concluded that the house fire was intentionally started after he excluded mechanical and electrical causes. Eddie Ledbetter was inside the home at the time of fire and required medical treatment as a result of his injuries. The primary issue in the case was whether the Defendant was present at the home around 4:00 p.m when the fire began. Steven Ledbetter testified that he spoke to the Defendant on the telephone at 2:30 p.m. about having chili and that he spoke to his brother thirty minutes before the fire and heard the Defendant in the background. There is no evidence to suggest Mr. Ledbetter was mistaken about the time of the telephone calls or that he had a motive to be dishonest. The jury credited Mr. Ledbetter's testimony placing the Defendant at the home near the time of the fire. This evidence contradicts the Defendant's testimony that Eddie Ledbetter threw her out the front the door before noon and that she hid in the woods until nightfall. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE