IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 3, 2009 Session

## STATE OF TENNESSEE v. TARIK ROBERTSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-01869     James M. Lammey, Jr., Judge**

**No. W2008-01592-CCA-R3-CD   -   Filed November 10, 2009**

The Defendant-Appellant, Tarik Robertson, was convicted by a Shelby County jury of observation without consent, a Class A misdemeanor. He received the maximum sentence of eleven months and twenty-nine days, with four months to be served in a county workhouse. On appeal, he claims: (1) the insufficiency of the evidence; (2) the trial court did not properly exercise its role as the thirteenth juror; (3) the State committed prosecutorial misconduct in its closing argument; and (4) the trial court erred in imposing both the length and manner of his sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Randall W. Pierce (at trial) and Randall B. Tolley (on appeal), Memphis, Tennessee, for the Defendant-Appellant, Tarik Robertson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tiffani S. Taylor, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

    **Facts**. Around midnight on August 17, 2006, Trumekia Shaw was preparing to take a bath when she thought she saw a "blurred vision in the window." Shaw ran out of the bathroom to tell her husband, but later returned to the bathroom to continue her bath. Shaw testified that while she was sitting naked in the bathtub, she saw Robertson's face "matted straight to the glass window" for one to two minutes. Shaw then "started screaming and hollering" before she ran out of the bathroom and called the police. She testified that she had never seen Robertson before.

    Shaw testified that the police arrived roughly one minute after she called them. She met the officers outside of her home, and described Robertson as wearing a white shirt with a "low" haircut

and big eyes. After Robertson was detained, Shaw identified him as the individual who looked into her window.

Shaw testified that her bathroom window is at eye level if standing in the tub. The window shares the same wall as the tub. She described the window as stained glass with a flower design in the middle. The glass has different colors, including green, pink, and purple. Shaw stated, "Some parts of it is clear and some parts of it is stained. It's frosted." From the inside looking out, she said "you can see straight through it." Shaw testified that she was not wearing glasses while sitting in the tub; however, she began wearing glasses about three weeks before the trial.

Shaw testified that three months after the incident, she was approached by Robertson at a fast-food restaurant. She was about to order at the drive-thru when Robertson pulled his vehicle to the side of her vehicle. Shaw said that Robertson then offered her seven hundred dollars to "go before the media and clear his name." Shaw later reported these events to the police.

Officer Marco Yzaguirre of the Shelby County Sheriff's Department testified that he and Officer Michael Kraemer responded to a "prowler call" from Shaw's home. Officer Yzaguirre confirmed that they were less than one minute from Shaw's home when he received the call from the dispatcher. Upon arrival Officer Yzaguirre observed that Shaw "came out of the house, screaming." Officer Yzaguirre testified that "she kept yelling, 'He's in the back, he's in the back.'" Officer Yzaguirre ran to the east side of Shaw's home where he saw a black man wearing a white shirt and matching the description provided by Shaw. Officer Yzaguirre said Robertson also wore jean shorts and tennis shoes. After Robertson was detained, Shaw identified Robertson as the prowler. Officer Yzaguirre testified that Robertson repeatedly said he was a fireman, denied that he was a prowler, and explained that he was out jogging. Officer Yzaguirre said Robertson asked the officers to issue him a misdemeanor citation because they "are in the same business."

Officer Michael Kraemer of the Shelby County's Sheriff's Department testified that he assisted Officer Yzaguirre in responding to the prowler call. Officer Kraemer stated that after Robertson was detained, he went to investigate the bathroom window. He found a partial shoe print on an air conditioner that sits under the bathroom window. Officer Kraemer examined the sole of Robertson's shoe and determined that it matched the print on the air conditioner. The print on the air conditioner was not preserved and no photographs were taken. Later at trial, Officer Yzaguirre testified that the arrest ticket did not mention the shoe print.

Officer Terry Williams of the Shelby County Sheriff's Department testified that Shaw filed an intimidation report on March 8, 2007. Although the report showed that Robertson approached Shaw at the drive-thru of a fast food restaurant, it did not state that Robertson offered Shaw seven hundred dollars in an effort to clear his name. Officer Williams testified, however, that Shaw told him that she was offered the money. He did not include this information in the report upon the instruction of his field commander.

Robertson testified that before midnight on August 16, 2006, he left his home after an argument with his wife. He wore a white polo shirt and white tennis shoes. Robertson stated that he lives in the same area as Shaw. He was walking to a gas station to purchase a drink when he

realized that his wallet was at home. On his return home, Robertson testified that he walked past Shaw's home, which he thought was vacant. He was then grabbed by a police officer who called him a prowler. Robertson denied looking through Shaw's bathroom window. He said he did not tell the officers that he was a fireman, and he denied asking to receive a lenient misdemeanor citation. Robertson also denied that he later approached Shaw at a fast-food restaurant. He claimed one of the officers told Shaw what Robertson was wearing before she identified him to the police.

## ANALYSIS

**I. Sufficiency of the Evidence**. Robertson contends the evidence was insufficient to support his conviction for observation without consent. Specifically, he argues the State failed to show that he observed Shaw, or that the observation was for the purpose of sexual arousal or gratification. The State contends the evidence was sufficient to support Robertson's conviction.

When challenging the sufficiency of the evidence, the defendant "has the burden of illustrating why the evidence is insufficient to support the jury's verdict." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997) (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)). This court must consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 442 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard applies to convictions based upon direct, circumstantial, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it. Bland, 958 S.W.2d at 659. This court has often stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." Id. (citation omitted). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. This Court does not reweigh or reevaluate the evidence." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)).

A person is guilty of the offense of observation without consent who "knowingly sp[ies] upon, observe[s] or otherwise view[s] an individual, when the individual is in a place where there is a reasonable expectation of privacy, without the prior effective consent of the individual, if the viewing: (1) Would offend or embarrass an ordinary person if the person knew the person was being viewed; and (2) Was for the purpose of sexual arousal or gratification of the defendant." See T.C.A. § 39-13-607(a) (2006).

Here, Robertson failed to show that the evidence was insufficient to support his conviction. Based on the testimony of Shaw and Officer Kraemer, a rational jury could have found that Robertson knowingly spied upon, observed, or viewed Shaw naked in her bathtub. Shaw testified that Robertson's face was "matted straight to the glass window," and that he stared directly at her for approximately one to two minutes while she sat in the tub. Officer Kraemer testified that he examined the air conditioner that sits under the bathroom window. He found a partial shoe print that

matched the sole of the Robertson's shoe. In Robertson's brief, he argues that Shaw could not have identified him through the window because it was not sufficiently transparent. This argument centers on the jury's assessment of Shaw's credibility, which is not a ground upon which we will grant relief. See Bland, 958 S.W.2d at 659. Robertson further claims the proof did not sufficiently show that the viewing was for the purpose of gratification or sexual arousal. We have previously recognized that "jurors may use their common knowledge and experience in making reasonable inferences from evidence." State v. Meeks, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993) (determining that a jury can draw on common knowledge and experience to ascertain if the defendant touched the victim for sexual arousal or gratification). The victim in this case was sitting naked in her bathtub while Robertson watched her for one to two minutes until she began screaming. Based on this proof, it is reasonable for a jury to infer that the purpose of Robertson's spying or viewing was for sexual arousal or gratification. Robertson has not met his burden of illustrating why the evidence is insufficient to support the jury's verdict, and therefore he is not entitled to relief.

**II. Thirteenth Juror**. Robertson claims the trial court erred by refusing to act as the thirteenth juror pursuant to Tennessee Rule of Criminal Procedure 33(d). The State argues the trial court fulfilled its duty as the thirteenth juror by expressly affirming the jury's verdict.

Tennessee Rule of Criminal Procedure 33(d) states, "The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." On appeal, a trial court's judgment may only be reversed if the record contains statements by the trial judge indicating disagreement with the jury's verdict or evidencing the trial judge's refusal to act as the thirteenth juror. State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). Otherwise, appellate review is limited to challenging the sufficiency of the evidence pursuant to Rule 13(e) of the Rules of Appellate Procedure. State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). If the trial court has failed to fulfill its role as the thirteenth juror, the reviewing court must grant a new trial. State v. Moats, 906 S.W.2d 431, 435 (Tenn. 1995).

In this case, the trial court denied the motion for new trial, stating:

I've read this motion [for new trial]. I do recall the trial. I do believe that there was a valid question as to the guilt of Mr. Robertson. I did think that the state did make out a prima facie case of observation without consent. I agreed with the jury verdict, and I affirmed that at the time."

The record shows that the trial court agreed with the jury's verdict after considering the evidence presented at trial. The trial court properly fulfilled its role as the thirteenth juror, and therefore this issue is not subject to appellate review.

**III. Prosecutorial Misconduct**. Robertson claims the State made several comments during its closing argument that constituted prosecutorial misconduct. The defense did not raise a contemporaneous objection to any of these comments at trial. Consequently, these issues are waived pursuant to Tennessee Rule of Appellate Procedure 36 (a). See also State v. McPherson, 882 S.W.2d 365, 373 (Tenn. Crim. App. 1994); State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993); and State v. Thomas, 818 S.W.2d 350, 364 (Tenn. Crim. App. 1991).

Waiver notwithstanding, Robertson failed to demonstrate that he was prejudiced in any way by the State's comments. See State v. Bigbee, 885 S.W.2d 797, 809 (Tenn. 1994) (holding that when a prosecutor makes improper remarks during a closing argument, the appellate court must determine "whether the impropriety affected the verdict to the prejudice of the defendant"), superseded by statute on other grounds as stated in State v. Odom, 137 S.W.3d 572, 611 (Tenn. 2004) (Barker, J., dissenting); see also State v. Seay, 945 S.W.2d 755, 763 (Tenn. Crim. App. 1996) (holding that the defendant must show that prosecutor's remark was "so inflammatory or so improper that it affected the verdict to his or her detriment").

In reviewing Robertson's strongest claim of prosecutorial misconduct, the State commented, "Individuals who are sworn to protect us, either from fire, or from criminals, expect favors from one another, when they are suspected of doing wrong. Then there is something very, very wrong with that." These remarks were improper because the State injected its personal belief about an issue that is broader than the guilt or innocence of Robertson. See State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003) ("The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law . . ."). The prejudicial effect of these comments, however, was limited, as both Officers Yzaguirre and Kraemer testified that Robertson asked to receive a misdemeanor citation because of his position as a fireman. The State's efforts to emphasize this testimony by injecting a broader issue certainly did not affect the verdict to Robertson's detriment.

Upon our review of the record, we also conclude that Robertson's remaining claims of prosecutorial misconduct are without merit. The State's comments during closing argument were supported by evidence at trial, and they did not prejudice Robertson's defense. Furthermore, most of Robertson's claims were not supported by argument, which ordinarily constitutes a waiver of the issue. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); see also State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000). Robertson is not entitled to relief on this issue.

**IV. Sentencing**. Robertson argues the trial court erred in imposing both the length and manner of his sentence. He received the maximum sentence for a Class A misdemeanor of eleven months and twenty-nine days, with four months to be served in a county workhouse before release on probation. Robertson claims he should have received a shorter sentence and full probation. The State contends the trial court acted within its discretion in imposing the sentence.

Sentencing for a misdemeanor offense is governed by Tennessee Code Annotated section 40-35-302(b), which provides that the trial court shall impose sentences consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. This statute gives trial courts considerable flexibility in misdemeanor sentencing. See State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). Review of misdemeanor sentencing is de novo with a presumption of correctness, irrespective of whether the trial court made specific findings on the record. State v. Danyel D. Martin, No. M2008-00178-CCA-R3-CD, 2009 WL 1026059, at *2 (Tenn. Crim. App., at Nashville, Apr. 14,

2009) (citing <u>Troutman</u>, 979 S.W.2d at 274). The trial court "need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of misdemeanor sentencing." <u>Troutman</u>, 979 S.W.2d at 274.

At the sentencing hearing, the trial court found that several factors supported the imposition of the maximum sentence and the four-month period of confinement. These factors include Robertson's prior conviction for aggravated criminal trespass, his adamant denial of guilt, the nature of the offense, and the impact of Robertson's observation on the Shaw family. The trial court was particularly struck by the veracity of Robertson's testimony, which the court described as "aggravated perjury." The court also considered Robertson's efforts to "get out of trouble with the police." The trial court acknowledged Robertson's work as a decorated fireman; however, it determined that full probation "would unduly depreciate the seriousness of the offense." The record shows the trial court considered the principles of sentencing, T.C.A. § 40-35-102, as well as the mitigating and enhancement factors set out in sections 40-35-113 and 40-35-114. The trial court acted pursuant to its authority under section 40-35-302. Accordingly, Robertson is denied relief on this issue.

**Conclusion**. Based on the foregoing, the judgment of the trial court is affirmed.

           _____

           CAMILLE R. McMULLEN, JUDGE