IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY SESSION, 1998

FILED

April 9, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9704-CR-00137 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | CUMBERLAND COUNTY |
| VS. | ) | |
| | ) | HON. LEON C. BURNS, JR. |
| JACK THOMAS NORRIS, | ) | JUDGE |
| & ERNEST RAY MEADOWS | ) | |
| Appellant. | ) | (Direct Appeal - Attempted First |
| | ) | Degree Murder) |

FOR THE APPELLANT:

LARRY M. WARNER
Attorney for Jack Thomas Norris
P. O. Box 601
Crossville, TN 38557

MARGARET JANE POWERS
Attorney for Ernest Ray Meadows
79 North Main Street
Crossville, TN 38555-4576

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MARVIN E. CLEMENTS, JR.
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

BILL GIBSON
District Attorney General

ANTHONY J. CRAIGHEAD
Assistant District Attorney
145 South Jefferson Street
Cookeville, TN 38501

DAVID PATTERSON
Assistant District Attorney
206 East Second Street
Crossville, TN 38555

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

The appellants, Jack Thomas Norris and Earnest Ray Meadows, were convicted by a Cumberland County jury of attempted first degree murder. Norris received a sentence of 24 years for his conviction, and Meadows was sentenced to 22 years. On appeal, Norris and Meadows raise several joint issues for our consideration:

> 1) whether the evidence presented by the state was sufficient to support the jury's verdict;
>
> 2) whether the trial court erred in denying a motion for a continuance;
>
> 3) whether the prosecution improperly used the "missing witness" argument in its closing; and
>
> 4) whether the trial court erred in refusing to grant a new trial after a juror attempted to impeach its own verdict.

Additionally, Meadows claims that the trial court erred by denying his motion in limine regarding expert testimony. After a thorough review of the record before this Court, we affirm the judgment of the trial court as to both Appellants.

## FACTS

Appellant Norris owned and operated a salvage yard located at the entrance to the subdivision where James Yates, the victim, lived. Norris lived in a mobile home adjacent to the salvage yard. Mr. Yates did not like the appearance of the junkyard and made inquiries to state officials as to whether Norris was violating any governmental regulations.

On April 18, 1995, Mr. Yates and his wife drove past Norris' home on their way to dinner. As their car passed, Danny Wiggins, an employee of Norris, made an offensive hand gesture toward the couple. Mr. Yates stopped the car and attempted to speak with Wiggins. Wiggins returned to the trailer, but Norris came outside. Norris and Yates quickly got into an argument, and during the course of the argument, Norris told Yates that he had "messed with the wrong . . . M__ F___." Norris also threatened to blow Yates' head off. As Norris came off the porch toward the Yates' car, Yates drove away.

Instead of going to the restaurant, the Yates attempted to find Sheriff Leon Tollett. When they located him at his residence, Yates told the Sheriff about the animosity between Norris and him and that he was frightened. The couple then returned home.

Mrs. Yates left to pick up dinner from a local restaurant. While he was waiting for his wife to return, Mr. Yates heard a loud car drive past, racing its engine. He noticed that the car was an older model brown Toyota. The car frightened him, so Yates retrieved his unloaded .12 gauge shotgun and placed it by the front door.

After Mrs. Yates returned, Mr. Yates heard the same car stop in front of his home. Yates turned on his porch light, picked up the shotgun, and stepped onto the front porch. He observed Norris standing on the passenger side of the brown Toyota he had seen earlier. He could not see and did not identify the driver of the vehicle. Yates saw a flash of light next to Norris' head and realized that he had been shot. He dropped his gun and went inside the house. Mrs. Yates then drove him to the hospital where he was treated for shotgun wounds to his face, neck, and torso.

Shortly after the shooting, an investigator for the Cumberland County Sheriff's Department observed a car matching the description given by Yates. He and a fellow officer stopped the car, which was driven by Appellant Meadows. The license plate on the car was registered to a Plymouth in Meadows' name. After obtaining Meadows' consent to search the car, the officers discovered a yellow .20 gauge shotgun shell in the back floorboard. The officers had the vehicle towed to the justice center and later recovered another .20 gauge shot shell from a coat which was found in the car. The shells were manufactured by Winchester and contained number 6 bird shot pellets.

Special Agent Donald Carman with the Tennessee Bureau of Investigation (TBI) analyzed the shot wad and shotgun pellets found at the scene of the crime. Carman concluded that the wadding was consistent with a .20 gauge filler shot wad manufactured by Winchester. He further determined that the pellets were consistent with Number 6 bird shot. He also compared one of the shells taken from Meadows' car with the physical evidence recovered from the victim's home and found that all components of the shell were consistent with the wadding and pellets taken from the scene.

Russell Davis, another special agent with the TBI, testified that he conducted gunshot residue tests on Meadows' Toyota. He found chemical compounds consistent with gunshot residue on the roof, rear driver's side window, passenger door, and dashboard of the vehicle.

At trial, Danny Wiggins testified for the state and stated that he was present at Norris' residence throughout the day on April 18. Wiggins testified that after Yates and Norris got into the argument that day, Norris became increasingly angry. Norris stated that he "ought to kill the m___ f___." Around the time of the crime, Wiggins saw Norris and Meadows leave Norris' home in

Meadows' brown older model Toyota. They stated that they were going to "take care of some business." Wiggins testified that after Norris and Meadows left, he heard the car drive around the subdivision and stop. He then heard a loud bang, which sounded like a shotgun blast. When Norris returned home, he stated that Meadows had left to "get rid" of the gun. Meadows later returned with Johnny and Naomi Boles and told Wiggins that the Boles would give him an alibi.

Norma Harris testified that she was dating Meadows in April of 1995. She stated that she and Meadows owned a shotgun together at the time of the shooting. On April 18, Meadows came to her home asking to borrow the gun, and she gave him the gun along with three (3) yellow shot shells. Meadows was driving a brown car that night. Meadows did not return the shotgun, and when Harris asked him to return it, Meadows told her to "forget the gun" and "forget [she] ever saw it."

Each Appellant testified in his own behalf at trial. Both denied shooting the victim and being with anyone who shot the victim. Norris insisted that he was at home during the shooting, and Meadows claimed that he was at Naomi and Johnny Boles' residence at the time of the incident. Meadows further attempted to explain the presence of gunshot residue on his vehicle. He testified that Bobby Cumby came by the salvage yard on April 18 and asked to shoot at old cars in order to set the scope on a rifle. Meadows stated that Cumby placed the gun on the top of Meadows' car in order to steady the rifle while shooting.

Naomi and Johnny Boles testified that Meadows was at the Boles' home when the call came over the police scanner that a shooting had occurred in Norris' neighborhood. Austin Lewis, a relative of Norris, testified that he was in Norris' trailer with Norris on the night of the shooting from approximately 8:00 until 9:10 p.m.

In rebuttal, the state called Investigator Bradley Nealon with the Cumberland County Sheriff's Department. Nealon testified that he spoke with Austin Lewis on the night of the incident, and Lewis stated that he had been at his residence all evening.

The jury convicted both Appellants of attempted first degree murder. From their convictions, Norris and Meadows bring this appeal.

## SUFFICIENCY OF THE EVIDENCE - NORRIS AND MEADOWS

Both Appellants argue that the evidence presented by the State at trial is insufficient to sustain the jury verdict of attempted murder in the first degree. They claim that due to various inconsistencies in the evidence, no rational trier of fact could have found them guilty beyond a reasonable doubt.

### A.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d at 779.

A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d at 75. Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id.

**B.**

Both Appellants were convicted of attempted first degree murder, which is described as acting with intent to "engage[] in action" or to "complete a course of action" which would constitute the offense of first degree murder. Tenn. Code Ann. § 39-12-101(a)(1), (3) (1991). First degree murder is the "intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (1991).

**C.**

Yates testified that he observed Norris standing by an older model brown Toyota, saw a flash next to Norris' head and then realized that he had been shot. Yates positively identified Norris as the shooter. The testimony of a victim identifying the defendant as the perpetrator of the crime is sufficient, in and of itself, to support a conviction. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).

Furthermore, several witnesses, including Norris himself, testified that Norris threatened to blow Yates' head off within hours of the shooting. Wiggins testified that Norris and Meadows left Norris' home in Meadows' car shortly before the crime, both claiming that they were going to "take care of some business." Although Yates could not positively identify Meadows as the driver of the car, he was able to identify Meadows' vehicle. Harris testified that Meadows borrowed her shotgun and some ammunition on the evening of April 18. Law enforcement authorities recovered ammunition from Meadows' vehicle which was consistent with the physical evidence found at the crime scene. Moreover, gunshot residue was discovered on Meadows' vehicle.

The evidence against the Appellants was overwhelming. Although both Appellants presented evidence of an alibi at the time of the shooting, the jury, as trier of fact, was free to disregard that testimony. Additionally, any conflicts in proof were resolved by the jury. The weight and credibility of witnesses' testimony are matters entrusted solely to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292 (Tenn. Crim. App. 1978).

**D.**

Meadows also claims that there was insufficient evidence to establish that Appellants intended to kill the victim, due to the lack of evidence that Yates could have died from a single shot of bird shot. To the contrary, Dr. Roberto Baylosis, an emergency room physician at Cumberland Medical Center, testified that the gunshot wounds inflicted upon the victim could have caused him to bleed to death had the pellets punctured his arterial vessels. In any event, there is substantial evidence of the Appellants' intent to kill, in light of Norris' multiple threats to kill Yates within hours of the shooting.

## E.

This Court concludes that a rational trier of fact could have determined that Appellants intended to "engage[] in action" or to "complete a course of action" which would constitute the offense of first degree murder. This issue is without merit.

## MOTION FOR CONTINUANCE - NORRIS AND MEADOWS

In the second allegation of error, Appellants claim that the trial court erred in denying their respective motions for a continuance in order to secure Bobby Cumby's presence at trial. They contend that Cumby's testimony would have corroborated Meadows' testimony by explaining the presence of gunshot residue on Meadows' car.

On the first day of trial, Appellants filed a motion for continuance, on the basis that Bobby Cumby could not be located. Meadows wished to call Cumby as a witness to testify that, on the day of the incident, Cumby had propped a rifle on the hood of Meadows' vehicle while shooting at old cars in the junkyard. According to Meadows, this testimony would explain the presence of gunshot residue on his vehicle. The Sheriff's Department had attempted to serve a subpoena on Cumby to secure his presence at trial, but was unsuccessful because Cumby was on vacation in Florida. Apparently, the trial had previously been rescheduled from a prior date due to inclement weather. However, the Sheriff's Department was unable to locate Cumby for service of the prior subpoena as well.

Initially, we note that Norris failed to include this issue in his motion for new trial.[1] Therefore, as to him, the issue is waived. Tenn. R. App. P. 3(e); State v. Maddox, 957 S.W.2d 547, 553 (Tenn. Crim. App. 1997).

Nevertheless, because the issue was properly raised by Meadows, we will address it on its merits. The procedure for requesting a continuance in order to secure the presence of a witness is well-settled:

> When requesting a continuance to accommodate a missing witness, the grounds must be set out in an affidavit which alleges (a) the substance of the facts the defendant expects to prove through the unavailable witness; (b) sufficient facts to establish the relevance and materiality of the testimony; (c) the admissibility of the testimony, if the witness was available; (d) the non-cumulative nature of the testimony; (e) the witness' availability at a later date; and (f) due diligence in attempting to obtain the presence of the witness. State v. Dykes, 803 S.W.2d 250, 256-57 (Tenn. Crim. App. 1990); Tenn. Code Ann. § 19-1-110(a). Failure to file the motion in proper form may be a ground for denial. State v. Dykes, 803 S.W.2d at 257.

State v. Zirkle, 910 S.W.2d 874, 884 (Tenn. Crim. App. 1995).

A motion for a continuance is addressed to the sound discretion of the trial judge and his ruling on the motion will not be disturbed in the absence of an abuse of discretion to the prejudice of the defendant. State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995). An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted. Id. at 579.

Under the record before this Court, there is no indication that Cumby would be available at a later date. The Sheriff's Department attempted on two occasions to serve Cumby with a subpoena to appear in court. Those attempts

---

[1] In his motion for new trial, Norris alleges "[o]ther grounds which will be supplied by the Defendant." Such an allegation is insufficient to preserve the issue on appeal. "[N]o issue presented for review shall be predicated upon error . . . unless the same was specifically stated in a motion for new trial." Tenn. R. App. P. 3(e) (emphasis added). No written amendment to the motion is in the record before this Court, nor did Norris attempt to orally amend the motion.

were unsuccessful due to the inability to locate Cumby. Although Appellants attribute this to Cumby's being on vacation in Florida during the second attempt at service, no explanation is offered as to why Cumby could not be located on the first attempt. Because Appellants have not established that Cumby would have been available at a later date, we conclude there was no abuse of discretion in denying a continuance. *See* State v. Zirkle, 910 S.W.2d at 884.

This issue has no merit.

## EXPERT TESTIMONY - MEADOWS

Meadows additionally insists that the trial court erred in allowing TBI Special Agent Russell Davis to testify. Davis' testimony concerned the presence of gunshot residue on the top of Meadows' car. Meadows claims that Davis' testimony was prejudicial. Further, he argues that this testimony, coupled with the denial of a continuance, had the effect of compelling Meadows to testify at trial.

Because Meadows failed to include this issue in his motion for new trial, the issue is waived.[2] Tenn. R. App. P. 3(e); State v. Spadafina, 952 S.W.2d 444, 451 (Tenn. Crim. App. 1996). In any event, the evidence of gunshot residue on Meadows' car was certainly relevant at trial. Tenn. R. Evid. 401. Furthermore, Meadows has cited no grounds for excluding the evidence, other than that it had a prejudicial effect. Meadows' right to refrain from testifying does not include the right to be free of any prejudicial testimony against him.

This issue is without merit.

---

[2] Meadows' motion for new trial also contains an allegation of "[o]ther grounds which will be supplied by the Defendant."

## MISSING WITNESS ARGUMENT - NORRIS AND MEADOWS

Norris and Meadows further assert that the prosecution made improper use of the "missing witness" argument during its closing argument. They argue that the state was precluded from mentioning Bobby Cumby in its closing, because Cumby could not be located to testify at trial. They contend that the prosecution's argument overly emphasized the absence of Cumby's testimony and, therefore, caused the jury to discredit Meadows' testimony.

In its closing argument, the prosecution made the following remarks:

> Now, Mr. Meadows came here today and told you that by some sheer coincidence, on the same day this happened, his good friend Mr. Cumby, his real good friend Mr. Cumby, was out there taking target practice. And not only was he taking target practice, but by sheer coincidence, he was using his Toyota to sight this barrel over. What are the odds? Then they take -- and that's all you have to go by, by the way, ladies and gentlemen, is Mr. Meadows' word. . . . What are the odds?

"[A] party is entitled to argue, and have the jury instructed, that if the other party has it peculiarly within his power to produce a witness whose testimony would naturally be favorable to him, the failure to call that witness creates an adverse inference that the testimony would not favor his contentions." State v. Middlebrooks, 840 S.W.2d 317, 334 (Tenn. 1992) (citations omitted). However, in order to invoke the "missing witness" rule, the evidence must show that "the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for trial." Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979).

In reviewing a claim of prosecutorial misconduct during closing argument, we are guided by such factors as:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.

2. The curative measures undertaken by the court and the prosecution.

3. The intent of the prosecution in making the improper statement.

4. The cumulative effect of the improper conduct and any other errors in the record.

5. The relative strength or weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

We must initially note that neither Appellant objected to the allegedly improper argument. Therefore, both have waived this issue. State v. Green, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); State v. Seay, 945 S.W.2d 755, 762 (Tenn. Crim. App. 1996); State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992); Tenn. R. App. P. 36(a). Additionally, this issue was not included in Norris' motion for new trial and is waived, as to him, for this reason as well. Tenn. R. App. P. 3(e); State v. Maddox, 957 S.W.2d at 553.

Regardless, from a reading of the state's entire closing argument, it does not appear that the prosecution was asking the jury to draw an adverse inference from Cumby's absence. The prosecution was merely exploring the credibility of Meadows' explanation for the presence of gunshot residue on his vehicle. In light of the overwhelming evidence of guilt, we do not believe that any reference to Cumby during closing argument affected the verdict. See Judge v. State, 539 S.W.2d at 346.

This issue has no merit.


**JUROR TESTIMONY AS BASIS FOR NEW TRIAL - NORRIS AND MEADOWS**

In their final issue, Appellants argue that the trial court erred in denying their respective motions for a new trial on the basis of a juror's testimony that she was uncomfortable with the verdict.

At the beginning of the sentencing hearing, defense counsel called Kathy Jan Burns to testify concerning her dissatisfaction with the jury's verdict. She stated that she was a member of the jury which found Norris and Meadows guilty of attempted first degree murder. She testified that she felt that the verdict was "rushed," and the jury did not fully deliberate on the evidence presented at trial. She further stated that she "had serious doubts within five minutes" after the verdict.

At the hearing on the motion for new trial, the defense presented an affidavit signed by James Morgan indicating that he heard Wayne Findley, a juror, state that three jurors were going to "hang Jack's ass." However, the state called Findley to testify at the hearing, and Findley denied making such a statement.

Norris failed to include this issue in his motion for new trial. Therefore, as to him, the issue is waived. Tenn. R. App. P. 3(e); State v. Maddox, 957 S.W.2d at 553. Nevertheless, we will address the issue with regard to Meadows.

Tenn. R. Evid. 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

A juror may testify or submit an affidavit in connection with a motion for new trial, in the limited circumstances of:

> (1) "extraneous prejudicial information" finding its way into the jury room,
>
> (2) improper outside pressure on a juror, or
>
> (3) a quotient or gambling verdict.

Tenn. R. Evid. 606(b), Advisory Commission Comments.

Juror Burns' testimony concerning her personal dissatisfaction with the jury's verdict was inadmissible evidence in support of the Appellants' motion for new trial. Clearly, her testimony did not indicate that she was subjected to improper outside pressure or that "extraneous prejudicial information" came into the jury room. Nor did she testify that the jury's verdict was a quotient or gambling verdict.

This same is true for the information contained in Morgan's affidavit. Although Findley testified that he never made the statement that three jurors were going to "hang Jack's ass," such a statement would not be admissible evidence under Tenn. R. Evid. 606(b).

Because the trial court was presented with no competent evidence concerning the validity of the jury's verdict, there was no error in failing to grant a new trial on this basis. This issue is without merit.

## CONCLUSION

-16-

After a thorough review of the record before this Court, we find no reversible error. Accordingly, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
THOMAS T. WOODALL, JUDGE

_____
WILLIAM B. ACREE, JUDGE