# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 1, 2012

## STATE OF TENNESSEE v. DEMP DOUGLAS

### Direct Appeal from the Circuit Court for Madison County
### No. 11-112    Donald H. Allen, Judge

### No. W2011-01753-CCA-R3-CD  - Filed July 9, 2012

A Lake County jury convicted the Defendant, Demp Douglas, of one count of aggravated assault, and the trial court sentenced him to ten years in the Tennessee Department of Correction.  On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction and that the trial court erred when it denied his motion for a mistrial based upon the victim's testimony that he met the Defendant shortly after the Defendant was released from prison.  After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Demp Douglas.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; James G. ("Jerry") Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from the Defendant threatening the victim with a gun on November 4, 2010.  For this incident, the Defendant was indicted for aggravated assault.  At his trial on this charge, the parties presented the following evidence: James Oscar Johnson testified that,

at around 10:00 or 11:00 p.m. on November 4, 2010, the Defendant almost hit him in the head with a gun. He described the events leading up to this, saying that he was at home and noticed that there were "a lot of guys" down the street. He walked toward the crowd and said, "Tell me something good and stick to it." He explained that this statement meant to convey to the group the question, "[W]hat's going on?" It was a way of saying "hello."

The Defendant, who was in the crowd, was standing to Johnson's left. Johnson recognized the Defendant as "Demp," the man who had dated Johnson's fiance's sister shortly after being released from prison.[1] Johnson recalled that the Defendant, who had a hood over his head at the time, responded, "I ain't doing." Johnson said again, "Tell me something good and stick to it." The Defendant brandished a grey firearm and said, "I don't doing, but popping these bullets." Johnson said he responded, "Don't be pulling that thing over here like that." The Defendant asked Johnson what he had said. Johnson said he became "kind of nervous" and "scared" at the sight of the gun. Johnson said he again told the Defendant not to pull that "thing up like that" and then walked away.

Johnson said that he took about two steps away from the Defendant and, out of the corner of his eye, he saw the Defendant swing the gun at him. Johnson testified he ducked and the gun tipped the scrub cap that he was wearing, knocking it askew. Johnson ran to the front of a car, and the Defendant approached the other side of the car. After the Defendant approached the car, Johnson ran toward a nearby house, saying to the Defendant, "Since you pulled it up on me, let me see if you can pull it up on 911 like that?" Johnson explained this was his way of conveying to the Defendant that he was going to call the police. Johnson recalled that, shortly thereafter, the Defendant fired the gun at him.

Johnson said he returned to his home and told his fiancé, who was in the home, to call 911. The police came, questioned him, and then they went to the scene of the shooting to look for the spent cartridge.

On cross-examination, Johnson testified that he sat outside of his house for awhile before he walked down the street to see why the crowd had gathered. Johnson clarified that the Defendant never chased him during this encounter.

Nicholas Donald, an officer with the Jackson Police Department, testified that he responded to a call about this shooting. When he arrived, he spoke with Johnson, who told him that a man had shot a gun at him and chased him. Johnson told the officer the location of the man after he shot at him, and the officer proceeded to that location in an attempt to

---

[1]It was at this point that the Defendant moved for a mistrial based upon Johnson's testimony that the Defendant had previously been in prison.

recover a spent shell casing. Officer Donald, assisted by another officer, Officer Tosh, successfully located a 9 millimeter casing approximately four or five feet from the street inside the yard of a nearby house. Officer Douglas testified that Officer Tosh contacted the Defendant, who was in a house near the scene of the shooting.

On cross-examination, Officer Douglas testified that Johnson came with him to the scene of the shooting. He said Johnson reenacted the shooting while he searched for the spent bullet casing. Johnson, he said, never touched the casing after they located it. Johnson told the officer that he was on his way home when this incident occurred. Officer Douglas testified that, when police knocked on the Defendant's door, the Defendant answered and did not run away. Officer Douglas recounted that police officers searched the Defendant's home, but they never found a weapon, and no weapon related to this case had ever been found.

On redirect examination, Officer Douglas recalled that the victim was "frantic, nervous, [and] shaking" when the officer interviewed him. The officer said he questioned approximately ten people who witnessed the incident, but none of them would provide a statement. The officer estimated that the Defendant's house was approximately fifty yards from the area where the shooting occurred.

Officer Laura Tosh[2] testified that she responded to the call in this case. When she first arrived, she noticed Johnson, who was "very frantic and frightened," and his fiancé on their front porch. Johnson told the officer that one of his neighbors had pulled out a gun and shot at him. After speaking to the couple, Officer Tosh went to the Johnson's neighbor's house in an attempt to contact the Defendant. Officer Tosh said she successfully contacted the Defendant, who was "very calm" and acted as if he did not "have a clue what was going on." Officer Tosh said the Defendant was "cooperative" and did not resist arrest. Officer Tosh testified that the Defendant told her that he had not heard any gunshots that evening.

On cross-examination, Officer Tosh testified that she never searched the yard where the shooting occurred and that two other officers conducted that search. She agreed that the Defendant asked her to perform a gunshot residue test on his hands, but she explained she had never performed such a test in her time as an officer.

Brandon Trice testified for the defense, stating that he and the Defendant were neighbors. Trice said that on November 4, 2010, he was outside on his porch when he heard a gunshot. Trice recalled that he saw the Defendant at the time that he heard the gunshot and that the Defendant did not have a gun in his hand. Trice said that he observed the Defendant

---

[2]Officer Tosh noted that she was married between the time of this shooting and the trial. Her married name was Laura Parr. For clarity, we will refer to her herein as "Officer Tosh."

3

walk to his house and sit on the front porch.

On cross-examination, Trice testified he did not see Johnson at the time of the altercation but had seen him earlier in the evening. Trice said he did not speak with police the night of the shooting because it was "none of [his] business really."

Based upon this evidence, the jury convicted the Defendant of aggravated assault. The trial court sentenced him to ten years in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction and that the trial court erred when it denied his motion for a mistrial based upon the victim's testimony that he met the Defendant shortly after the Defendant was released from prison.

### A. Sufficiency of Evidence

On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction for aggravated assault. He specifically argues the following: Johnson was running from the scene when he heard the gunshot and did not see the Defendant shoot the gun; officers did not perform the gunshot residue test on his hands as he requested; and there was contradictory testimony about who found and secured the shell casing at the scene of the shooting. The State counters that the Defendant committed aggravated assault when he swung his gun at Johnson's head.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)

(citations omitted). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

According to our statutes, "A person commits aggravated assault who: (A) Intentionally or knowingly commits an assault as defined in § 39-13-101, and . . . Uses or displays a deadly weapon." T.C.A. § 39-13-102(a)(1)(ii) (2010). According to Tennessee Code Annotated section 39-13-101, a person commits assault who:

> (1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

T.C.A. § 39-13-101(a)(1)-(3) (2010).

In this case, the Defendant first contends that there was insufficient proof to identify him as the shooter. The State counters that the Defendant's swinging of his firearm at Johnson's head constituted aggravated assault and that the shooting was a continuation of this assault. When the trial court overruled the Defendant's motion for new trial it stated:

I . . . recall that the victim, Mr. Johnson, did testify that on this particular occasion that the [D]efendant who he identified here in court . . . had pulled out a gun. I believe the victim described it as perhaps a 9 millimeter or perhaps a 380, but indicated that the [D]efendant pulled out a gun and pointed the gun at him which according to him placed him in fear of – he said he was afraid for his life, I believe was his testimony. Of course, I believe he said at some point he turned to run and that's when he heard a gunshot fired in his direction. So, you know, certainly there was evidence that [the Defendant] was in possession of a deadly weapon being a handgun and he did use this handgun or display this handgun in a manner to cause Mr. Johnson to fear imminent bodily injury and, of course, fortunately Mr. Johnson wasn't struck by the bullet, but at least the testimony was that he was placed in fear and was actually shot at on that occasion.

We conclude that the evidence supports the jury's verdict convicting the Defendant of aggravated assault. The testimony presented at trial, viewed in the light most favorable to the State, proved that the Defendant was congregating with others at a residence near Johnson's residence. Johnson approached the crowd and asked, essentially, what was going on in the group. The Defendant responded by saying "I don't doing, but popping these bullets," while brandishing a weapon. Johnson said he was "scared" at the sight of the gun, told the Defendant not to pull that "thing up like that," and then walked away. The Defendant swung the gun at Johnson, Johnson ducked, and the Defendant narrowly missed Johnson's head, tipping the hat on Johnson's head. Johnson ran to a nearby car, and the Defendant followed him. Johnson then ran toward a nearby house and informed the Defendant he was going to call the police. Johnson turned and saw the Defendant behind him, and heard a gunshot. Police found a shell casing near the area where Johnson said the

6

Defendant was standing when he shot at him. Officers, responding to Johnson's fiance's 911 call, found Johnson "frantic" and "frightened." We conclude that this evidence supports the jury's finding that the Defendant caused the victim to reasonably fear imminent bodily injury when he chased the victim with a gun and fired the gun.

The Defendant contests the sufficiency of evidence of his identity as the shooter. He is correct that the identity of the perpetrator is an essential element of any crime, and it, therefore, must be proven by the State beyond a reasonable doubt. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). We would also note that issues of identity and credibility are classic jury questions. *State v. Gregory Mullins*, No. E2004-02314-CCA-R3-CD, 2005 WL 2045151, at *5 (Tenn. Crim. App., at Knoxville, Aug. 25, 2005), *no Tenn. R. App. P. 11 application filed*. Further, as stated above, questions concerning the credibility of the witnesses are resolved by the trier of fact. *Evans*, 108 S.W.3d at 236. This Court does not second-guess the weight, value, or credibility afforded to the evidence by the jury. The jury had ample evidence upon which it could conclude that the Defendant was the man who shot a gun during this incident. Johnson recognized the Defendant and saw him in possession of a gun. The Defendant attempted to hit Johnson with the gun and followed Johnson while holding the gun. After Johnson said he was going to call the police and ran away, he heard a gunshot from a short distance behind him. Police found a spent shell casing in the area where Johnson said the Defendant was standing. A reasonable jury could infer that the Defendant fired the weapon he was carrying. The Defendant is not entitled to relief on this issue.

### B. Motion for Mistrial

The Defendant next contends that the trial court erred when it denied his motion for mistrial based upon Johnson's testimony that he met the Defendant after the Defendant was released from prison. The State counters that the trial court properly gave a curative instruction, which was sufficient to cure any error.

During the trial, the following occurred:

Q. [State Attorney] Were you friends with the defendant?
A. [Johnson] Not really, but he goes with my fiance's sister.
Q. He goes with your fiance's sister?
A. He used to when he got out of prison. When he got out of prison, my fiance's sister was talking to him.
Q. Were you friends or just kind of know of him?

7

A.  I just know of him when he got out of prison.  I didn't know him that well.

After the Defendant moved for a mistrial, the trial court instructed the jury to disregard Johnson's statement and to not consider it as evidence in this case.

The decision of whether to grant a mistrial is within the sound discretion of the trial court.  *State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996).  Normally, a mistrial should be declared only if there is a manifest necessity for such action.  *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977).  One description of manifest necessity is that, "[i]f it appears that some matter has occurred which would prevent an impartial verdict from being reached," a mistrial must be declared.  *Id.*  Additionally, a manifest necessity exists when "no feasible alternative to halting the proceedings" exists.  *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981).  The defendant bears the burden of establishing a manifest necessity.  *State v. Seay*, 945 S.W.2d 755, 764 (Tenn. Crim. App. 1996).  This Court will not disturb that decision unless there is an abuse of discretion.  *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990); *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

In determining whether a mistrial is warranted because of inappropriate testimony of a witness, our Supreme Court has used the following three nonexclusive factors: "(1) whether the State elicited the testimony, or whether it was unsolicited and unresponsive; (2) whether the trial court offered and gave a curative jury instruction; and (3) the relative strength or weakness of the State's proof."  *State v. Nash*, 294 S.W.3d 541, 547 (Tenn. 2009) (citing *State v. Smith*, 893 S.W.2d 908, 923 (Tenn. 1994)).

In this case, we conclude the Defendant has not shown that the trial court abused its discretion when it denied his motion for mistrial.  First, the contested testimony was not elicited by the State.  The State tried to establish whether Johnson knew the Defendant, and Johnson spontaneously responded that he met the Defendant after the Defendant had been released from prison.  Second, the trial court gave specific curative instructions to the jury, explaining that the jury must disregard the statement.  We presume jurors follow the curative instructions of the trial court.  *State v. Stout*, 46 S.W.3d 689, 715 (Tenn. 2001); *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998).  Finally, the State presented a strong case against the Defendant.  The testimony does not, therefore, demonstrate a manifest necessity requiring a mistrial.  The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.


_____

ROBERT W. WEDEMEYER, JUDGE